(No. 83282.—

## THE CINCINNATI COMPANIES, Appellee, v. WEST AMERICAN INSURANCE COMPANY, Appellant.

*Opinion filed September 24, 1998.*

Robert Marc Chemers and Scott L. Howie, of Pretzel & Stouffer, Chrtd., of Chicago, for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Patricia R. Morton and Kristin L. Dvorsky, of counsel), for appellee.

JUSTICE McMORROW delivered the opinion of the court:

The issue in this case is whether an insurer's duty to defend its insured arises upon its receipt of *actual notice*

of the suit against its insured, or whether the duty to defend is triggered only upon the insured's *tender* of its defense to the insurer. The appellate court held that actual notice of the underlying claim was sufficient to trigger the duty to defend, regardless of whether the insured tendered its defense to the insurer, provided the insured did not knowingly forgo the insurer's involvement. 287 Ill. App. 3d 505. We affirm the appellate court.

## BACKGROUND

This insurance coverage case has its roots in an underlying suit brought by Lorren Kessel against several defendants, including Baird Land Surveyors (Baird) and William Grady, doing business as B&D Home Repair and Builders (B&D). Kessel was injured while working at a construction site. Baird and B&D were contractors at the site. Baird was listed as an additional insured on a policy which was issued by the plaintiff, The Cincinnati Companies (Cincinnati), and held by another contractor at the site. B&D was insured under a policy issued by the defendant, West American Insurance Company (West American).

Upon receiving service of process in Kessel's suit, Baird tendered its defense in the case to its own insurer, which then tendered the defense to Cincinnati. B&D tendered its defense to West American. Thus, both Cincinnati and West American had notice of the suit shortly after service of process upon Baird and B&D. In the course of discovery in the underlying suit, Kessel served B&D with interrogatories which, *inter alia*, asked B&D whether it was insured for the injuries alleged in Kessel's complaint, and asked that B&D list the insureds under each policy which might cover Kessel's injuries. B&D's answer to the interrogatories stated that B&D was covered by the West American policy, and listed only itself, B&D, as an insured under that policy.

On January 27, 1992, the eve of the third trial date

set for the underlying case, counsel for B&D disclosed to Baird that, contrary to the answer given in response to Kessel's interrogatories, Baird was in fact listed as an additional insured on the West American policy issued to B&D. Prior to this disclosure, Baird did not know that it was listed as an additional insured on the West American policy. Counsel for Baird, retained by Cincinnati, then tendered Baird's defense to West American. West American rejected the tender.

On February 17, 1992, Kessel settled the underlying case for $60,000. Under the terms of that settlement, Baird and B&D were each to pay $30,000. Cincinnati paid Baird's share of the settlement, and West American paid B&D's share. Prior to reaching the settlement, Cincinnati and West American entered into a stipulation in which it was agreed that Cincinnati would preserve its right to pursue a contribution action against West American for reimbursement of the settlement payment and attorneys' fees.

On January 25, 1993, Cincinnati filed this declaratory judgment action against West American. Cincinnati sought a declaration that West American was a primary insurer for Baird in the underlying litigation, and that West American was thus liable for the amount which Cincinnati had paid on behalf of Baird to settle the underlying case, as well as the attorney fees and costs incurred by Cincinnati on behalf of Baird in defending the case. Cincinnati and West American then filed cross-motions for summary judgment. The trial court granted Cincinnati's motion for summary judgment. The court found that "[t]he Answers to Interrogatories provided to Baird made no reference to the West American/Ohio Casualty policy and foreclosed Baird's opportunity to make a reasonable judgment as to tender," and that "[t]he lack of tender must not be attributed to Baird but to West American through the actions of the B&D attorney in

the *Kessel v. Baird* case." The trial court found that West American was liable for an "equitable" share of the settlement and of attorney fees incurred after the service of the answers to interrogatories on January 2, 1991. Cincinnati filed a motion for entry of money judgment for $15,000, representing one-half of the settlement paid on behalf of Baird, and $14,384.50, representing one-half of the attorney fees and costs incurred after January 2, 1991, on behalf of Baird. On April 26, 1996, the circuit court entered judgment against West American in the amount of $29,384.50.

West American appealed the trial court's ruling on the motions for summary judgment and its entry of the monetary judgment. West American argued that an insurer has no obligation to defend an insured until the insured tenders its defense to the insurer, that is, asks the insurer for assistance in defending the underlying suit; that Baird never tendered its defense in the underlying action; and that the trial court erred in attributing this lack of tender to the attorney for B&D. The appellate court affirmed the judgment of the court, holding that "an insurer's duty to defend claims potentially falling within the terms of a policy is triggered when the insurer has actual notice of the lawsuit, regardless of whether there has been an actual tender of defense by the insured." 287 Ill. App. 3d at 511, citing *Federated Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 282 Ill. App. 3d 716, 726 (1996). The appellate court recognized, but declined to follow, the contrary decision in *Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill. App. 3d 70 (1992), in which the court held that an insurer's duty to defend a sophisticated insured arose only upon tender of the defense to the insurer. The appellate court in the case at bar determined that West American had received actual notice of the underlying suit against both Baird and B&D

shortly after service of process in that case. Moreover, the court found no evidence that Baird had consciously selected one insurer over another to provide its defense. The court found that B&D's attorney, acting as the agent for both B&D and West American, had responded inadequately to Kessel's discovery requests by failing to note that Baird was an insured under the West American policy, and that Baird's failure to tender was thus attributable to West American. Finally, the appellate court rejected West American's argument that it should not be liable for attorneys' fees and costs incurred by Cincinnati prior to Baird's tender to West American in January 1992. The appellate court held that, because the delay in tender was due to the incomplete discovery responses of B&D's attorney, who was an agent of West American, West American's obligation to share in these expenses took effect at the time of those responses. We granted West American's petition for leave to appeal to this court. 166 Ill. 2d R. 315.

## ANALYSIS

"In insurance law, contribution is 'an equitable principle arising among coinsurers which permits one who has paid the entire loss to receive reimbursement from the other insurer liable for the loss.' " *Aetna Casualty & Surety Co. v. James J. Benes & Associates, Inc.*, 229 Ill. App. 3d 413, 417 (1992), quoting *Hall v. Country Casualty Insurance Co.*, 204 Ill. App. 3d 765, 772 (1990). In the case at bar, Cincinnati alone paid the costs of Baird's defense, and the amount of Baird's settlement indebtedness, in the underlying case. Cincinnati then brought this action for equitable contribution against West American, seeking to recover half of these costs. The issue presented in this appeal is whether West American was also liable for Baird's costs because Baird was an insured covered by the policy issued by West American. More specifically, the question is whether West

American's duty to defend Baird was triggered when it had actual notice of the suit against Baird, even though Baird did not tender its defense to West American.[1] Because this is an appeal from an order granting summary judgment, we review the case *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

Generally, the question of whether an insurer has a duty to defend an insured depends on the allegations of the complaint and the scope of the policy. "In order to determine whether [an] insurer's duty to defend [an insured] has arisen, the court must compare the allegations of the underlying complaint to the policy language. [Citations.] *** If the court determines that these allegations fall within or *potentially within,* the policy's coverage, the insurer has a duty to defend [an] insured against the underlying complaint. [Citations.]" (Emphasis in original.) *Outboard Marine Corp.*, 154 Ill. 2d at 125.

However, certain courts applying Illinois law, including the United States Court of Appeals for the Seventh Circuit and certain districts of the Illinois appellate court, have held that an additional requirement must be met before an insurer's duty to defend is triggered. These courts hold that the duty to defend arises only after the insured tenders its defense to the insurer. *Hartford Accident & Indemnity Co. v. Gulf Insurance Co.*, 776 F.2d 1380, 1383 (7th Cir. 1985) (*Hartford I*); *Institute of London*, 234 Ill. App. 3d at 80. According to these courts, "[w]hat is required [to trigger the duty to defend] is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." *Hartford I*, 776 F.2d at 1383.

---

[1]We note that neither Cincinnati nor West American argues governance of the terms of the policy with respect to when the duty to defend arises. Consequently, policy defenses have not been a factor in our decision.

The courts which require an insured to tender its defense before the duty to defend is triggered recognize an exception to the tender rule if the insured is "unsophisticated." Under this exception, an insurer's duty to defend an unsophisticated insured is triggered solely by the insurer having "actual notice" of the suit against its insured. See *Long v. Great Central Insurance Co.*, 190 Ill. App. 3d 159, 169-70 (1989). See also *Aetna Casualty & Surety Co. v. Chicago Insurance Co.*, 994 F.2d 1254, 1260 (7th Cir. 1993); *Hartford I*, 776 F.2d at 1383; *Institute of London*, 234 Ill. App. 3d at 76-77. "Actual notice" is defined as "notice sufficient to permit the insurer to locate the suit and defend it." *Long*, 190 Ill. App. 3d at 168. This exception to the tender requirement is the result of concern that application of the tender rule to an unsophisticated insured would be unfair in light of the fact that the insurer has superior knowledge about the scope of its policies, and that the insured may not be aware of the tender requirement. See, *e.g.*, *Hartford Accident & Indemnity Co. v. Gulf Insurance Co.*, 837 F.2d 767, 774 (7th Cir. 1988) (*Hartford II*).

The courts which require tender also hold that any insured—irrespective of the sophistication of the insured—covered by more than one policy can knowingly designate one of the insurers to defend. *Institute of London*, 234 Ill. App. 3d at 78-80; *Aetna*, 994 F.2d at 1260. Where the insured makes such a designation, the duty to defend falls solely on the selected insurer. That insurer may not in turn seek equitable contribution from the other insurers who were not designated by the insured. *Institute of London*, 234 Ill. App. 3d at 79. This rule is intended to protect the insured's right to knowingly forgo an insurer's involvement. *Institute of London*, 234 Ill. App. 3d at 79.

In the case at bar, consistent with its prior announcements on the issue of whether tender is required to trig-

ger the duty to defend, the appellate court, Second District, rejected the requirement of tender. The court held that an insurer's duty to defend is triggered solely by its having "actual notice" of a claim against its insured. 287 Ill. App. 3d at 511-12, citing *Federated Mutual*, 282 Ill. App. 3d at 726. It defined "actual notice" as " 'notice sufficient to permit the insurer to locate and defend the lawsuit.' " 287 Ill. App. 3d at 512, quoting *Federated Mutual*, 282 Ill. App. 3d at 726. The court further held that the rule allowing notice to trigger the duty to defend applies without regard to the level of the insured's sophistication. Finally, the appellate court held that the insurer's duty to defend was not triggered where an insured has knowingly forgone an insurer's involvement, or where " 'there is *** prejudice to the insurer.' " 287 Ill. App. 3d at 511, quoting *Federated Mutual*, 282 Ill. App. 3d at 726.

West American argues that the appellate court erred in ruling that tender is not required to trigger an insurer's duty to defend when the insured is "sophisticated." It offers several arguments in support of this position. First, West American argues that, by holding actual notice is sufficient to trigger the duty to defend, the appellate court "stripped policyholders of an initial measure of autonomy—by curtly dismissing the notion that an insured might not want a particular insurer to defend a particular claim, even if the policy in question allows the insured to claim a defense." West American further argues that a rule allowing actual notice to trigger the duty to defend is based on the "unfortunate presumption that an insurer should presume that an insured desires its involvement unless the insured declares otherwise," and that, while this presumption "might frequently be true[,] there are easily imaginable circumstances in which it is untrue—and in which the insurer's intermeddling might be unwelcome or even

detrimental." In sum, West American argues that an insured should have the right to forgo coverage under a policy if the insured so desires, and that allowing actual notice of an underlying suit against an insured to trigger an insurer's duty to defend might deprive the insured of that right.

We find this argument unpersuasive. It is true that an insured may choose to forgo an insurer's assistance for various reasons, such as the insured's fear that premiums would be increased, or the policy cancelled, in the future. See *Institute of London*, 234 Ill. App. 3d at 78-79. Moreover, an insured's ability to forgo that assistance should be protected. However, we do not believe that the appellate court's holding that actual notice is sufficient to trigger a duty to defend would operate to "strip" policyholders of the ability to forgo an insurer's assistance. On the contrary, an insured may knowingly forgo the insurer's assistance by instructing the insurer not to involve itself in the litigation. The insurer would then be relieved of its obligation to the insured with regard to that claim. Furthermore, and contrary to West American's suggestion, the insurer is not required to actually defend every claim against its insured of which it has actual notice. The duty to defend may be discharged simply by contacting the insured to ascertain whether the insurer's assistance is desired. If the insured indicates that it does not want the insurer's assistance, or is unresponsive or uncooperative, the insurer is relieved of its duty to defend. *Towne Realty, Inc. v. Zurich Insurance Co.*, 548 N.W.2d 64, 67 & n.2 (Wis. 1996). If, after being contacted, the insured indicates that it desires the insurer's assistance, then the insurer's duty to defend continues.

West American next argues that, under the appellate court's decision, every claim against an insured of which an insurer has notice will require the insurer either to

involve itself in the underlying litigation or to seek a declaratory judgment that it does not owe a duty to defend. West American explains that, "uncertain of whether its insured's silence is an implicit tender or an indication that the insured does not regard the claim as a covered one, the insurer is at peril of forfeiting its ability to challenge its obligations under the policy. Its prudent response is either to insinuate itself into litigation its policy might not cover, or to commence its own litigation to determine its coverage obligations." This argument is similar to that relied upon by a number of "tender rule" courts, which have found that allowing mere notice to trigger the duty to defend would require the insurer to "intermeddle officiously" in the underlying litigation. See *Hartford I*, 776 F.2d at 1383, citing *Oda v. Highway Insurance Co.*, 44 Ill. App. 2d 235, 253 (1963). See also *Institute of London*, 234 Ill. App. 3d at 75, quoting *Hartford I*, 776 F.2d at 1383.

We find this argument also to be misplaced. Where the insurer has actual notice of a claim against its insured, it would not be required to interpret the insured's silence as a desire for assistance. Rather, the insurer can simply ask the insured if the insurer's involvement is desired, thus eliminating any uncertainty on the question. Contrary to West American's argument, the insurer is not required to insinuate itself into the litigation at this stage. The insurer does not become liable simply by inquiring of the insured whether it desires the insurer to defend. The insurer is only *potentially* liable at this stage. Moreover, this *potential* liability is not a result of the insurer's contacting the insured, but of the insurance contract for which the insurer received consideration.

West American next argues that a rule allowing actual notice to trigger the duty to defend a sophisticated insured would create "difficult problems of proof concern-

ing the insurer's knowledge of the underlying suit," and that a tender of the defense should be required. We are not persuaded by this argument for two reasons. First, courts have long allowed actual notice to trigger the duty to defend unsophisticated insureds. See, *e.g.*, *Federated Mutual*, 282 Ill. App. 3d at 726-27; *Long*, 190 Ill. App. 3d at 169-70. West American points to no case in which a court has struggled with the question of when an insurer had actual notice. Second, West American's suggested alternative to this rule—an alternative which would provide different treatment for sophisticated and unsophisticated insureds—might also create difficult problems of proof by requiring courts to determine the level of an insured's "sophistication." *Continental Casualty Co. v. United Pacific Insurance Co.*, 637 So. 2d 270, 274-75 (Fla. Dist. Ct. App. 1994) ("[o]bviously, what constitutes 'sophistication' *** is fertile ground for litigation").

For these reasons, we reject West American's arguments in support of the tender requirement. We believe that the better rule is one which allows actual notice of a claim to trigger the insurer's duty to defend, irrespective of the level of the insured's sophistication, except where the insured has knowingly forgone the insurer's assistance. This rule is the result of a number of considerations. First, the insurer is usually in a better position than even a sophisticated insured to know the scope of the insurance contract and its duties under it. See *Towne Realty*, 548 N.W.2d at 67. In light of this frequent disparity in information and knowledge of insurance law, we are reluctant to interpret an insured's silence as a statement of intent to forgo the insurer's assistance, particularly where, as West American concedes, the insured more often than not does in fact desire the insurer's involvement. As the *Federated Mutual* court stated:

> "Such a rule [requiring tender] requires an insured to jump through meaningless hoops towards an absurd end: telling the insurer something it already knows. Such a rule

injects a degree of gamesmanship into the insurer-insured relationship without providing any valid corresponding benefit. In fact, the only benefit of such [a] rule is to create a possibility—where none would otherwise exist—for an insurer to escape an obligation it otherwise owes *its* insured." *Federated Mutual*, 282 Ill. App. 3d at 725. This argument is supported by the fact that the duty placed on an insurer, one which may be satisfied by a simple letter to the insured requesting clarification, is hardly "onerous." *Towne Realty*, 548 N.W.2d at 67.

A second reason for allowing actual notice to trigger the duty to defend is to assure or protect the benefits of the insurance contract. The insurer, having received consideration for inclusion of the insured on its policy, should not be allowed to evade its responsibilities under the policy as a result of the insured's ignorance, particularly where the insurer has actual notice of a claim against its insured. See *Federated Mutual*, 282 Ill. App. 3d at 726-27.

Finally, we note that the state has an interest in having an insured adequately represented in the underlying litigation. *Aetna*, 994 F.2d at 1260; *Hartford I*, 776 F.2d at 1382; *Federated Mutual*, 282 Ill. App. 3d at 726. A rule which requires only actual notice to trigger the duty to defend will protect that interest. See *Federated Mutual*, 282 Ill. App. 3d at 726.

For these reasons, we hold that where the insured has not knowingly decided against an insurer's involvement, the insurer's duty to defend is triggered by actual notice of the underlying suit, regardless of the level of the insured's sophistication. We also agree with the appellate court's determination that "actual notice" should be defined as " 'notice sufficient to permit the insurer to locate and defend the lawsuit.' " 287 Ill. App. 3d at 512, quoting *Federated Mutual*, 282 Ill. App. 3d at 726. We note that, in order to have actual notice sufficient to locate and defend a suit, the insurer must know both

330

that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies.

It is clear from the record and from the findings of the trial court that West American had notice of the claim against its additional insured, Baird, no later than January 2, 1991. Moreover, Baird clearly would have tendered its defense to West American if Baird had known that it was listed as an additional insured on a policy issued by West American. Therefore, we affirm the appellate court's holding that West American is obligated to reimburse Cincinnati for one-half of Baird's settlement indebtedness, and also for one-half of Baird's attorney fees incurred after January 2, 1991.

CONCLUSION

For the reasons discussed above, the judgment of the appellate court is affirmed.

*Appellate court judgment affirmed.*