SIXTH DIVISION
September 15, 2006

No. 1-05-1248

KAJIMA CONSTRUCTION SERVICES,      )     Appeal from the
INC., AND TOKIO MARINE AND FIRE    )     Circuit Court
INSURANCE COMPANY,                 )     of Cook County.
                                   )
     Plaintiffs-Appellants,        )
                                   )
     v.                            )     No. 02 CH 4614
                                   )
ST. PAUL FIRE AND MARINE INSURANCE )     Honorable
COMPANY,                           )     Mary Ann Mason,
                                   )     Judge Presiding.
     Defendant-Appellee.           )
                                   )


     JUSTICE O'MALLEY delivered the opinion of the court:

     General contractor Kajima Construction Services (Kajima) and

its insurer, Tokio Marine and Fire Insurance Co. (Tokio)

(hereinafter plaintiffs), brought a declaratory judgment action

against its subcontractor's insurer, St. Paul Fire and Marine

Insurance Company (St. Paul), seeking reimbursement of a $1

million contribution by Tokio to indemnify Kajima in an

underlying personal injury lawsuit.  Cross-motions for summary

judgment were filed by the parties.  The circuit court granted

summary judgment in favor of defendant and against plaintiffs.

Plaintiffs appeal the judgment of the circuit court arguing that

it erred in holding that all primary insurance policies had to be

exhausted prior to reaching any excess insurance policies.  For

the reasons that follow, we affirm the judgment of the circuit court.

BACKGROUND

In December 1997, Kajima entered into a construction contract with Midwestern Steel Fabricators, Inc. (Midwestern), for a building project in Glendale Heights, Illinois. Pursuant to the contract, Midwestern was to obtain and maintain commercial general liability insurance coverage with $1 million of primary coverage and $5 million of umbrella coverage. Kajima was to be named as an additional insured on Midwestern's policy. Midwestern subsequently provided Kajima with a certificate of insurance reflecting primary coverage limits of $2 million and $5 million in excess coverage issued by St. Paul to Midwestern, naming Kajima as an additional insured.

During the construction project, Thomas Jones, an employee of Midwestern's subcontractor, was seriously injured.[1] On February 2, 1998, Jones filed a personal injury suit against Kajima and Midwestern alleging that his injuries were a result of their negligence. On March 3, 1998, Kajima made a "targeted tender" to Midwestern and St. Paul wherein it notified them that it expected to be defended and indemnified by St. Paul in the

---

[1]Midwestern had subcontracted a portion of its obligation under the contract between it and Kajima to Up Rite Steel Company, which employed Jones.

2

1-05-1248

Jones action. Kajima subsequently renewed its targeted tender to St. Paul on May 11, 1998, and June 4, 1998. St. Paul ultimately agreed to defend Kajima under a reservation of rights on August 15, 2000.[2]

Prior to trial, Tokio demanded that St. Paul settle the lawsuit with Jones for $3 million from St. Paul's primary and excess insurance policies without a contribution from Tokio. St. Paul refused. In June 2001, the Jones case settled during trial for $3 million. St. Paul paid its primary limits of $2 million and Tokio contributed its primary limits of $1 million to satisfy the settlement award. Plaintiffs, however, filed a declaratory judgment action against St. Paul, seeking reimbursement of Tokio's contribution to the settlement. Plaintiffs argued that Tokio was not responsible for defending or indemnifying Kajima because Kajima made a targeted tender to St. Paul for its defense and indemnification.

Plaintiffs and defendant filed cross-motions for summary judgment. Plaintiffs argued that St. Paul was responsible for the defense and indemnification of Kajima without contribution from Tokio's primary policy pursuant to the selective tender rule. Defendant, however, argued that although Kajima has the

[2]The record reveals that Tokio undertook Kajima's defense for a period of time prior to August 15, 2000, due to St. Paul's failure to respond to Kajima's tender of defense.

3

right to tender its defense and indemnification to one of several insurers that potentially cover the same risk, Illinois law requires that all primary policies be exhausted prior to reaching a true excess policy.  The circuit court agreed with defendant and entered summary judgment in favor of defendant and against plaintiffs.

Plaintiffs filed this timely appeal from the judgment of the circuit court, arguing that: (1) plaintiffs' selective tender was properly effected; (2) the selective tender rule supercedes the horizontal exhaustion doctrine; (3) St. Paul failed to reserve its rights under the Jones settlement; and (4) the two policies cover different risks.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2004); General Casualty Insurance Co. v. Lacey, 199 Ill. 2d 281, 284 (2002). We review an order granting summary judgment de novo.  General Casualty Insurance Co., 199 Ill. 2d at 284; Travelers Indemnity Co., v. American Casualty Co., of Reading, 337 Ill. App. 3d 435,

439 (2003).

The question squarely presented to this court is whether the selective tender rule supercedes well-settled principles of Illinois law regarding horizontal exhaustion. We find that it does not and hold that the selective tender rule applies to concurrent, not consecutive insurance coverage.

## II. SELECTIVE TENDER AND EXHAUSTION DOCTRINES

The selective tender or targeted tender doctrine is a rule recognized by Illinois courts whereby an insured covered by multiple concurrent policies has the right to choose which insurer will defend and indemnify it with respect to a specific claim. John Burns Construction Co., v. Indiana Insurance Co., 189 Ill. 2d 570, 574 (2000); Cincinnati Cos. v. West American Insurance Co., 183 Ill. 2d 317, 326 (1998); Institute of London Underwriters v. Hartford Fire Insurance Co., 234 Ill. App. 3d 70, 78-79 (1992). In Institute of London, this court held that when two insurance policies potentially apply to a loss, an insured may designate one insurer to undertake its defense and indemnity and thereby foreclose the settling insurer from obtaining contribution from the nonsettling insurer. Institute of London, 234 Ill. App. 3d at 78-79. Our supreme court has clearly established an insured's right to select exclusive coverage among concurrent primary insurance policies. John Burns, 189 Ill. 2d

at 574; Cincinnati, 183 Ill. 2d at 326. This court and our supreme court have also held that once an insured instructs an insurer not to involve itself in the defense or indemnification of a claim, that insurer " 'would then be relieved of its obligation to the insured with regard to that claim.' " Bituminous Casualty Corp. v. Royal Insurance Co. of America, 301 Ill. App. 3d 720, 724 (1998) quoting Cincinnati, 183 Ill. 2d at 326. The insured may choose to forego an insurer's assistance for various reasons, including the insured's fear that premiums would increase or that the policy would be canceled in the future. Cincinnati Cos. v. West American Insurance Co., 183 Ill. 2d 317, 326 (1998).

An insured has the right to selectively tender its defense and indemnification to one of several common insurers; indeed, this "right" has even been characterized as "paramount." Legion Insurance Co. v. Empire Fire & Marine Insurance Co., 354 Ill. App. 3d 699, 703 (2004) (explaining that an insured has the paramount right to choose or knowingly forego an insurer's participation in a claim); Alcan United, Inc. v. West Bend Mutual Insurance Co., 303 Ill. App. 3d 72, 79 (1999) (recognizing the paramount right of the insured " 'to seek or not to seek an insurer's participation in a claim as the insured chooses' "), quoting Institute of London, 234 Ill. App. 3d at 79.

6

Horizontal exhaustion, on the other hand, involves an insured who has multiple primary and excess policies covering a common risk. If a covered claim occurs, the theory of horizontal exhaustion requires the insured to exhaust all primary policy limits before invoking excess coverage. See Illinois Emcasco Insurance Co. v. Continental Casualty Co., 139 Ill. App. 3d 130, 134 (1985); United States Gypsum Co. v. Admiral Insurance Co., 268 Ill. App. 3d 598, 652-53 (1994). In contrast to horizontal exhaustion, vertical exhaustion allows an insured to seek coverage from an excess insurer as long as the insurance policies immediately beneath that excess policy, as identified in the excess policy's declaration page, have been exhausted, regardless of whether other primary insurance may apply. United States Gypsum Co., 268 Ill. App. 3d at 653; see also T. Hamilton, T. Stark, Excess-Primary Insurer Obligations and the Right of the Insured, 69 Def. Couns. J. 315, 320-21 (July 2002).

The requirement of horizontal exhaustion has been addressed and applied by Illinois courts on several occasions. United States Gypsum, 286 Ill. App. 3d at 598; Outboard Marine Corp. v. Liberty Mutual Insurance Co., 283 Ill. App. 3d 630, 642-43 (1996); Roman Catholic Diocese of Joliet, Inc. v. Lee, 292 Ill. App. 3d 447, 456-57 (1997); Missouri Pacific R.R. Co. v. International Insurance Co., 288 Ill. App. 3d 69, 80-81 (1997);

7

1-05-1248

<u>Illinois Central R.R. Co. v. Accident & Casualty Co. of Winterthur</u>, 317 Ill. App. 3d 737, 753 (2000); <u>Maremont Corp. v. Continental Casualty Co.</u>, 326 Ill. App. 3d 272, 279-80 (2001). In each case, this court held that the insured must first exhaust all available primary insurance coverage, including uninsured periods and self-insured periods, before an excess policy could be invoked. No Illinois case has either applied or favorably commented on the vertical exhaustion theory. <u>Maremont</u>, 326 Ill. App. 3d at 280.

The <u>United States Gypsum</u> court stated:

"Adopting Gypsum's position permitting 'vertical exhaustion' would allow Gypsum to effectively manipulate the source of its recovery, avoiding difficulties encountered as a result of its purchase of fronting insurance and the liquidation of some of its insurers. This would permit Gypsum to pursue coverage from certain excess insurers at the exclusion of others. Such a practice would blur the distinction between primary and excess insurance [citation] and would allow certain primary insurers to escape unscathed when they would otherwise bear the initial burden of providing indemnification. Likewise, certain co-excess insurers could avoid contributing to the indemnification of the insured when they would otherwise be responsible for any amount up

8

to the limit of the policy it issued." U.S. Gypsum, 268 Ill. App. 3d at 654.

The question, however, of whether an insured that selectively tenders its defense and indemnification to an insurer will be required to exhaust its primary limits and reach its excess limits before a deselected insurer will be obligated to contribute its primary limits has yet to be answered. In the instant case, plaintiffs contend that it exercised its paramount right to selectively tender its defense and indemnity to St. Paul.[3] As a result, St. Paul alone must respond to the defense and indemnity with both its primary and excess coverage policy limits before Tokio's primary limits are invoked. In other words, St. Paul must vertically exhaust its primary and excess policies as a result of Kajima's selective tender. Defendant responds that although the selective tender rule is recognized and applied by Illinois courts, it is applicable only to concurrent insurance coverage and not consecutive, primary and excess coverage policies where other primary coverage is available. We agree.

Plaintiffs cite to Institute of London Underwriters and John

---

[3]Although defendant argues that Kajima failed to effect a selective tender, we need not decide whether plaintiffs' selective tender was proper because it would not change the outcome of this case.

Burns for the proposition that a common insured has the right to select which insurer it wants to provide it with a defense and indemnification. John Burns, 189 Ill. 2d at 575 quoting, Cincinnati Cos., 183 Ill. 2d at 326 (holding that " 'an insured may knowingly forgo the insurer's assistance by instructing the insurer not to involve itself in the litigation. The insurer would then be relieved of its obligation to the insured with regard to that claim' "); Institute of London Underwriters, 234 Ill. App. 3d at 73 (finding that a claim for equitable contribution is defeated by an insured's instructions to its insurer not to defend or indemnify a specific action). Plaintiff, however, cites to no authority to support its assertion that an excess policy may be activated by an insured through a selective tender prior to exhausting the insured's other primary coverage. Plaintiffs also concede that no published case or court in Illinois has ever extended the selective tender rule to preempt the horizontal exhaustion doctrine and require an insurer to vertically exhaust its primary and excess coverage limits.

Defendant contends that the selective tender rule should only apply to concurrent insurance coverage among multiple insurers. Specifically, defendant argues that plaintiffs' application to excess coverage of the selective tender rule runs

afoul of well-established principles of Illinois insurance law recognizing differences between primary and excess coverage. U.S. Gypsum, 268 Ill. App. 3d at 651-54; Illinois Emcasco, 139 Ill. App. 3d at 134. Defendant further contends that applying vertical exhaustion would be tantamount to ignoring distinctions that this court has previously recognized between primary and excess insurance. Illinois Emcasco, 139 Ill. App. 3d at 134.

In the instant case, it is undisputed that Kajima has $3 million in primary general liability coverage available to it. The Tokio policy provides $1 million in primary coverage to Kajima as the named insured and St. Paul provides $2 million in primary coverage to Midwestern, naming Kajima as an additional insured. It is also undisputed that the umbrella policy issued to Midwestern which also names Kajima as an additional insured is a true excess policy. Indeed, " '[U]mbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses.' " Illinois Emcasco, 139 Ill. App. 3d at 134, quoting 8A J. Appleman, Insurance Law and Practice § 4906, at 348, § 4909.85, at 453-54 (1981).

Illinois law draws a clear distinction between primary and excess umbrella insurance policies, and we will not ignore our prior findings. Travelers Indemnity Co. v. American Casualty Co.

11

1-05-1248

of Reading, 337 Ill. App. 3d 435, 439-40 (2003); New Hampshire
Insurance Co. v. Hanover Insurance Co., 296 Ill. App. 3d 701, 705
(1998); American Country Insurance Co. v. Hanover Insurance Co.,
293 Ill. App. 3d 1025, 1032 (1998); Illinois Emcasco Insurance
Co. v. Continental Casualty Co., 139 Ill. App. 3d 130, 134
(1985).  We find Illinois Emcasco to be particularly instructive
in the present case.  In that case, this court recognized general
differences between primary coverage policies and umbrella
policies and took underlying policy considerations into account.
Illinois Emcasco, 139 Ill. App. 3d at 133-34.  We examined the
intentions of the contracting parties, the premiums paid and the
conditions to coverage relative to both primary and excess
insurance coverage.  We concluded, after construing the policy as
a whole, that an umbrella policy is unique in that it always
remains excess over and above other contracts with few exceptions
and thus could not be activated until all primary coverage is
exhausted.  Illinois Emcasco, 139 Ill. App. 3d at 133-34.

Based on prior authority from this court and our supreme
court, we decline plaintiffs' invitation to apply the vertical
exhaustion rule here.  In our view, the selective tender rule
should be applied to circumstances where concurrent insurance
coverage exists for additional insureds.  See American National
Fire Insurance Co. v. National Union Fire Insurance Co. of

12

Pittsburgh, 343 Ill. App. 3d 93, 109 (2003), (Quinn, J., specially concurring) ("[T]he targeted tender rule *** should be limited to instances involving parties which are additional insureds under concurrent primary policies"). To the extent that defense and indemnity costs exceed the primary limits of the selected insurer, the deselected insurer or insurers' primary policies must answer for the loss prior to invoking coverage under an excess policy. We therefore hold that the circuit court properly denied plaintiffs' motion for summary judgment and properly limited the use of the selective tender rule to concurrent insurance coverage.

### III. OTHER ARGUMENTS

Plaintiffs also argue that defendant failed to reserve its rights relative to the umbrella policy and, thus, cannot now argue policy defenses to avoid indemnifying Kajima. We find this argument to be unpersuasive and meritless. The failure of a paying insurer to reserve its rights against a nonpaying insurer may constitute a waiver of the right to equitable remedies. Home Insurance Co. v. Cincinnati Insurance Co., 213 Ill. 2d 307, 326-27 (2004), citing 15 Couch on Insurance 3d § 218:32 (rev. 2004). Here, St. Paul did not contribute from its excess policy because Tokio contributed $1 million to satisfy the settlement agreement. St. Paul was not a paying insurer and, thus, it was not required

13

to reserve its rights.

Plaintiffs also argue that Tokio and St. Paul insured substantively different risks and, as a result, St. Paul is required to vertically exhaust primary and excess policy limits on Kajima's behalf. Although plaintiffs do not allege that the loss at issue here was not covered by Tokio's policy, they claim that Tokio insured Kajima against claims arising from Kajima's work and St. Paul insured Kajima against liability arising from Midwestern's work. Plaintiffs rely on Schal Bovis, Inc. v. Casualty Insurance Co., 315 Ill. App. 3d 353, 363 (2000), where we held that multiple primary insurers were not entitled to equitable contribution when each insurer covered additional insureds only to the extent that liability arose from work provided by the named insured. We find plaintiffs' reliance on Schal Bovis misplaced and their argument meritless. Plaintiffs do not explain why vertical exhaustion is appropriate under Shal Bovis or how this case could be applied to benefit them in the instant case. It is undisputed that St. Paul's umbrella policy is excess and plaintiffs concede that equitable contribution does not apply in the context of primary and excess insurer issues. Home Indemnity Co. v. General Accident Insurance Co., 213 Ill. App. 3d 319, 321 (1991). Moreover, plaintiffs do not advance any recognized legal basis for either equitable contribution or

14

1-05-1248

reimbursement.  We, therefore, hold that the circuit court properly denied this claim.

## IV. WAIVER

Plaintiffs also argue, for the first time on appeal, that public policy requires the imposition of vertical exhaustion in this instance because plaintiffs would have been better situated if they had no insurance because St. Paul's excess policy would cover the loss and Kajima would not be affected.  We hold that plaintiffs waived this argument on appeal.  It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal.  See <u>Haudrich v. Howmedica, Inc.</u>, 169 Ill. 2d 525, 536 (1996); <u>Daniels v. Anderson</u>, 162 Ill. 2d 47, 58-59 (1994).  However, waiver aside, we find plaintiffs' argument unavailing especially when the problem of which Kajima complains can be easily remedied by requiring its subcontractors to increase their primary limits of insurance coverage.

## V. CONCLUSION

For the foregoing reasons, we hold that the selective tender rule does not entitle an insured to vertically exhaust consecutive insurance policies and deselected primary insurers must answer for a loss before an excess insurance policy will be activated.  Accordingly, the judgment of the circuit court is

15

1-05-1248

affirmed.

Affirmed

TULLY and FITZGERALD-SMITH, JJ., concur.

16