SIXTH DIVISION
December 8, 2006

No. 1-05-0606

| | |
|---|---|
| THE NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY and SHELCO STEEL WORKS, INC., | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees | |
| (United States Fire Insurance Company, | |
| Plaintiff-Appellee and Cross-Appellant | |
| v. | No. 00 CH 18557 |
| GRINNELL MUTUAL REINSURANCE COMPANY, THE TOKIO MARINE AND FIRE INSURANCE COMPANY, LIMITED, AMERICAN MISCELLANEOUS STEEL, INC., KAJIMA CONSTRUCTION SERVICES, INC., and BEVERLY KNAUER, d/b/a, KNAUER INSURANCE SPECIALISTS, f/k/a POTTER & KNAUER INSURANCE AGENCY, | |
| Defendants-Appellees | |
| Tokio Marine ane Fire Insurance Company, Limited, and Kajima Construction Services, Inc., | Honorable Richard J. Billik, Judge Presiding. |
| Defendants-Appellants and Cross-Appellees). | |

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff-appellee and cross-appellant United States Fire

Insurance Company (US Fire) brought a declaratory judgment action against defendant-appellant and cross-appellee Tokio Marine and Fire Insurance Company (Tokio) seeking reimbursement of funds from Tokio's primary insurance policy which were paid from US Fire's excess policy to fund a settlement in an underlying personal injury lawsuit.[1]  US Fire also sought equitable contribution from Tokio's excess policy for funds paid by US Fire's excess policy toward the settlement for which Tokio was allegedly responsible.  The parties filed motions and cross-motions for summary judgment.  The circuit court granted summary judgment in favor of US Fire and against Tokio on US Fire's reimbursement claim and granted summary judgment in favor of Tokio and against US Fire on its claim for equitable contribution from Tokio's excess policy.

For the reasons that follow, we affirm the judgment of the circuit court.

BACKGROUND

In 1996, general contractor Kajima Construction Services,

---

[1]Grinnell, AMS and Knauer Insurance Specialists were dismissed from this case prior to this appeal.  We subsequently granted Tokio's motion to voluntarily dismiss North River, Shelco and Kajima from this appeal.  The only parties remaining in this appeal are US Fire and Tokio.

Inc. (Kajima), commenced a building project in Bolingbrook, Illinois.  Kajima entered into a subcontract with Shelco Steel Works, Inc. (Shelco), to perform certain construction work on the project.  Shelco, in turn, subcontracted its obligation with Kajima to American Miscellaneous Steel, Inc. (AMS).  During construction of the Bolingbrook project, Michael Farkas, an employee of AMS, sustained serious and permanent injury when an iron bar joist fell on him while he was performing his duties.  In 1997, Farkas filed suit against Kajima, Shelco and others alleging negligence on their part which resulted in his injury.

On the date of Farkas's injury, Kajima was insured under a primary commercial general liability (CGL) insurance policy and an excess umbrella policy, both of which were issued by Tokio.  Shelco was covered by a primary CGL insurance policy issued by the North River Insurance Company (North River) and an excess umbrella policy issued by US Fire.  AMS was covered by a CGL primary policy and an umbrella policy, both of which were issued by Grinnell Mutual Reinsurance Company (Grinnell).  Kajima, Shelco and AMS had primary limits of $1 million on their respective primary CGL policies and limits in excess of $2 million in coverage for each umbrella policy.

On July 1, 1997, after receiving notice of the Farkas lawsuit, Kajima immediately tendered its defense and indemnity to

North River and Grinnell, the primary insurers for Shelco and AMS, respectively. The tender also indicated that Kajima was seeking an exclusive defense and indemnity from Shelco's and AMS's insurers without the benefit of Tokio's assistance. Kajima also notified Tokio of the lawsuit and its selective tender to Shelco and AMS's insurers by sending a copy of the July 1, 1997, letter to Tokio for reference purposes. Both North River and Grinnell ultimately accepted Kajima's tender and shared the costs of Kajima's defense. Attorney David Nani was assigned to Kajima as defense counsel and paid by North River to undertake Kajima's defense.

As the Farkas case proceeded through the various stages of trial, North River and Grinnell attempted to negotiate a settlement. In October 2000, it became apparent that a settlement within the limits of North River's and Grinnell's primary insurance policies was not possible. North River informed Tokio that Kajima's liability in the lawsuit could exceed North River and Grinnell's combined primary limits and suggested that Tokio contribute $500,000 toward a settlement package. Tokio refused to contribute. On November 13, 2000, North River and Grinnell advised Tokio that each insurer was tendering its full primary policy limits in an attempt to settle the Farkas lawsuit and that Tokio should do the same. Tokio

4

again refused to contribute any amount on Kajima's behalf to the settle the case.

The Farkas lawsuit was settled for $4 million after the jury began deliberating, but before a verdict was reached. The settlement was funded as follows: North River and Grinnell each contributed $1 million and US Fire contributed $2 million from Shelco's umbrella policy. Tokio did not contribute to the Farkas settlement. US Fire, Shelco and North River subsequently sought declaratory relief in the circuit court against Grinnell and Tokio, among others.[2] In its fifth amended complaint, US Fire alleged that Tokio was obligated to exhaust its primary insurance policy to indemnify Kajima before the US Fire umbrella policy would be obligated to contribute on Kajima's behalf.

Motions and cross-motions for summary judgment were filed by the parties. Tokio argued that it was not obligated to contribute to Kajima's defense and indemnity because its policy was not an available policy since Kajima had selectively tendered its defense and indemnity to Shelco and AMS and their respective insurers. As a result, the Tokio primary policy was not an

[2]Although Shelco, North River and US Fire sought various relief against several defendants, we will only address the allegations against the parties germane to issues presented for review by this court.

available policy for Kajima's defense and indemnity. US Fire responded that the selective tender rule does not apply to the excess layer of insurance and despite the rule's applicability to concurrent primary insurance policies, US Fire was not obligated to indemnify Kajima until all primary insurance policies were exhausted. In addition, US Fire asserted that Kajima's and AMS's excess insurers were obligated to equally contribute to the loss at the excess level due to the policies' mutually repugnant "other insurance" clauses. In other words, the selective tender rule should not apply to the excess policies issued by Grinnell, Tokio and US Fire because each policy purported to be excess to any other insurance. Grinnell subsequently settled with US Fire by paying $500,000 from its excess policy in reimbursement to US Fire.

The circuit court granted summary judgment in favor of US Fire and against Tokio relative to US Fire's claim that the horizontal exhaustion doctrine preempts the selective tender rule. On the issue of whether the selective tender rule applies to multiple excess policies, the circuit court ruled that the selective tender rule applies to multiple excess policies and because Kajima selectively tendered its defense and indemnity to its subcontractor's insurers, Tokio's excess policy was not available for indemnity until the targeted insurers had exhausted

6

their policy limits.  Tokio appealed and US Fire cross-appealed the judgment of the circuit court.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2004); General Casualty Insurance Co. v. Lacey, 199 Ill. 2d 281, 284 (2002). We review an order granting summary judgment de novo.  General Casualty Insurance Co., 199 Ill. 2d at 284; Travelers Indemnity Co. v. American Casualty Co. of Reading, 337 Ill. App. 3d 435, 439 (2003).

### II. VERTICAL EXHAUSTION AND THE SELECTIVE TENDER RULE

On appeal, Tokio contends that vertical exhaustion of Shelco's primary and excess policies was proper because Tokio's policy was not "triggered" pursuant to the selective tender rule. Tokio's bases for application of vertical exhaustion are: (1) Kajima notified Shelco's insurers that it would not seek indemnification from Tokio; (2) the contract between Kajima and Shelco required vertical exhaustion by Shelco's insurers; (3) US Fire waived any policy defenses with regard to vertical

7

exhaustion; and (4) Tokio received late notice that it would be required to indemnify Kajima.  We disagree.

This court has recently ruled that the selective tender rule does not entitle an insured to vertically exhaust consecutive insurance policies and deselected primary insurers must answer for a loss before an excess insurance policy will be activated. Kajima Construction Services, Inc. v. St Paul Fire & Marine Insurance Co., No. 1-05-1248, slip op. at 14 (September 15, 2006).  In Kajima, we held that the selective tender rule, which allows an insured covered by multiple concurrent policies the right to choose which insurer will defend and indemnify it with respect to a specific claim, applies to concurrent insurance coverage.  Kajima, slip op. at 5.  See also John Burns Construction Co. v. Indiana Insurance Co., 189 Ill. 2d 570, 574 (2000); Cincinnati Cos. v. West American Insurance Co., 183 Ill. 2d 317, 326 (1998); Institute of London Underwriters v. Hartford Fire Insurance Co., 234 Ill. App. 3d 70, 78-79 (1992).

We also explained the distinction between the horizontal and vertical exhaustion doctrines.  Kajima, slip op. at 6-7. Horizontal exhaustion requires an insured who has multiple primary and excess policies covering a common risk to exhaust all primary policy coverage before invoking excess coverage.  See Illinois Emcasco Insurance Co. v. Continental Casualty Co., 139

Ill. App. 3d 130, 134 (1985); United States Gypsum Co. v. Admiral Insurance Co., 268 Ill. App. 3d 598, 652-53 (1994). In contrast to horizontal exhaustion, vertical exhaustion allows an insured to seek coverage from an excess insurer as long as the insurance policies immediately beneath that excess policy, as identified in the excess policy's declaration page, have been exhausted, regardless of whether other primary insurance may apply. United States Gypsum Co., 268 Ill. App. 3d at 653; see also T. Hamilton, T. Stark, Excess-Primary Insurer Obligations and the Rights of the Insured, 69 Def. Couns. J. 315, 320-21 (July 2002).

We directly rejected the contention that perfecting a selective tender entitles an insured to vertically exhaust consecutive insurance coverage in Kajima, slip op. at 14. Notwithstanding Kajima's selective tender to Shelco's and AMS's insurers in this case, none of the arguments advanced by Tokio constitute an exception to our holding in Kajima. We will, however, briefly address the arguments that are not based on the selective tender rule which Tokio claims entitle it to vertical exhaustion.

### A. Subcontractor's Agreement

Contrary to Tokio's assertions, the underlying construction contract between Kajima and Shelco did not require Shelco to vertically exhaust its consecutive insurance coverage. The

agreement required that Shelco maintain primary and umbrella commercial liability insurance. The primary insurance policy was to have a $1 million per-occurrence limit and have Kajima named as an additional insured. The contract also required Shelco to obtain a $5 million umbrella liability policy. Tokio argues that vertical exhaustion is required pursuant to the construction contract because Kajima required Shelco to "maintain an umbrella liability policy providing the same coverage and with the same additional insureds as the basic policy." We agree with US Fire that it is difficult to make sense of Tokio's argument that vertical exhaustion is required based on the language cited here. The contract makes no reference to vertical exhaustion. After reviewing the record, we find nothing in the subcontractor agreement that can be construed as requiring Shelco's insurers to vertically exhaust consecutive insurance coverage. Consequently, Kajima was not entitled to vertically exhaust consecutive insurance coverage based on the underlying construction contract.

## B. Waiver and Estoppel

Next, Tokio argues that US Fire has waived its right to seek reimbursement or should be estopped from asserting the same because it did not issue a reservation of rights letter. Specifically, Tokio asserts that the insurance broker, Crum & Forster, accepted Kajima's selective tender on behalf of North

River and US Fire and failed to notify Tokio in a timely manner that US Fire would not agree to vertical exhaustion. We reject this argument.

First, we are of the view that Tokio's claims regarding waiver and estoppel are misplaced. Waiver and estoppel apply only where an insurer has breached its duty to defend. Thus, a court inquires whether the insurer had a duty to defend and whether it breached that duty. Montgomery Ward & Co. v. Home Insurance Co., 324 Ill. App. 3d 441, 450 (2001), citing Employers Insurance of Wausau v. Ehlco Liquidating Trust, 186 Ill. 2d 127, 151 (1999). "It is the duty to defend that gives rise to the duty to reserve rights when defense of a claim is undertaken, and without such a duty an insurer has no obligation to issue a reservation of rights letter." Montgomery Ward & Co., 324 Ill. App. 3d at 450, citing International Insurance Co. v. Sargent & Lundy, 242 Ill. App. 3d 614, 633 (1993). An excess insurer that has no duty to investigate coverage issues or to defend its insured will not be estopped from later asserting coverage defenses by a failure to issue a reservation of rights letter. Sargent & Lundy, 242 Ill. App. 3d at 632.

Here, it is undisputed that US Fire is an excess insurer and that North River and Grinnell provided Kajima with a defense for the Farkas litigation. As a result, US Fire was not required to

11

defend Kajima, although it was required to and did indemnify Kajima. Under these circumstances, the principles of waiver and estoppel are inapplicable to US Fire.

Second, the basis of Tokio's argument is that Kajima's tender was communicated on Crum & Forster letterhead and did not specifically exclude US Fire from the acceptance of the tender even though Crum & Forster represented both insurance carriers. Due to Crum & Forster's communication on behalf of North River, Tokio claims that it was under the impression that both insurers would exhaust their coverage for Kajima's defense and indemnity. Tokio urges this court to simply ignore the distinction between North River as a primary insurer and US Fire as an excess insurer because Crum & Forester did not mention that US Fire was an excess insurer and would not activate its policy until all primary insurance had been exhausted.

There is no legal authority cited by Tokio to support the theory that a letter from an insurance broker accepting a tender of defense and indemnity on behalf of a primary insurer must also expressly exclude any excess insurers. The record is replete with evidence that Kajima and Tokio were well aware that North River was the primary insurer and undertook Kajima's defense and US Fire was an excess insurer that did not participate in Kajima's defense. In fact, Tokio acknowledges in its brief that

12

the August 18, 1997, acceptance letter stated, "The North River Insurance Company is in receipt of *** [Kajima's tender of defense in the underlying case]. Please accept this as our acknowledgment and agreement to the same." The suggestion that Tokio and Kajima were somehow tricked into believing that North River and US Fire were one in the same based on an insurance broker's letterhead, when viewed in light of the record, is simply not believable.

Relative to Tokio's claim that it was notified late that US Fire would not activate its policy until Tokio's primary policy was exhausted is similarly without merit. Tokio and Kajima took the position, from the time it was notified of the litigation in 1997, that it would be entitled to vertically exhaust its subcontractors' consecutive insurance policies based on the selective tender rule. Illinois law does not allow an insured to vertically exhaust consecutive insurance coverage (Kajima, slip op. at 14) and Kajima's contract with Shelco did not require vertical exhaustion. Thus, it was unnecessary for US Fire to notify Tokio that it would have to exhaust its primary policy before the excess insurance would become available.

## C. Conflict of Interest

Finally, Tokio makes a fleeting reference to a conflict of interest relative to its assigned counsel in its brief on appeal.

13

Tokio implies that "a potential for conflict" existed because Shelco moved for summary judgment in the Farkas lawsuit, which, if successful, would have relieved Shelco and its primary insurer, North River, from all liability. The conflict existed because North River funded Kajima's defense and paid for attorney Nani's services. After reviewing the record, we find these allegations to be meritless and without evidence to support them. The record clearly establishes that attorney Nani provided Kajima with a vigorous, competent and effective defense at all stages of the Farkas litigation. There is not a shred of evidence in the record that supports Tokio's allegation that attorney Nani labored under a conflict of interest or that attorney Nani, North River or Shelco was involved in any plan to provide substandard representation to Kajima.

We, therefore, hold that the circuit court correctly ruled that the selective tender rule did not preempt the horizontal doctrine and that vertical exhaustion was not appropriate based on Tokio's other arguments. The circuit court's judgment that Tokio should contribute its primary policy to the Farkas settlement before the excess policies would be activated was correct.

### III. WAIVER OF ARGUMENTS ON APPEAL

Tokio next argues that the circuit court erred when it

ordered it to reimburse US Fire its entire $1 million policy limits. Specifically, Tokio contends that the circuit court made a <u>de facto</u> finding of fact with regard to Tokio's allocation of fault by requiring it to pay the full amount without first conducting a hearing on Tokio's proportionate liability. However, Tokio raised this argument in the circuit court for the first time in a motion for reconsideration.

US Fire argues that Tokio has waived any such argument, since it did not raise the issue of liability apportionment until its motion to reconsider. US Fire correctly contends it is not proper to raise a new legal theory or factual argument in a motion for rehearing and, thus, waiver applies to the parties with respect to this legal issue. <u>Coles-Moultrie Elec. Cooperative v. City of Sullivan</u>, 304 Ill. App. 3d 153, 166 (1999). "The decision to grant or deny a motion for reconsideration lies within the discretion of the circuit court and will not be reversed absent an abuse of that discretion. [Citation.] The intended purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law. [Citation.]

'Newly discovered' evidence is evidence that was not available prior to the hearing on the motion for summary

15

judgment. [Citation.] 'Trial courts should not allow litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling.' [Citation.]" Landeros v. Equity Property & Development, 321 Ill. App. 3d 57, 65 (2001). Tokio did not bring any newly discovered evidence to the circuit court's attention. It had been aware of the Farkas lawsuit since July 1997, and also knew that Kajima was named as a defendant and could potentially be found liable for Farkas' injuries. Further, Tokio did not cite to any changes in the law or errors in the court's previous application of the law in its motion for reconsideration. Thus, Tokio's claim that the circuit court erred in "allocating fault" on appeal is waived.

Even if waiver were inapplicable, we would affirm the circuit court's denial of Tokio's motion to reconsider. First, we note that North River notified Tokio during the Farkas trial that a settlement would exceed both North River's and Grinnell's primary limits. Tokio did not request an allocation of fault; instead, it demanded that North River and Grinnell settle the lawsuit without any contribution from Tokio. To the extent that an allocation of fault was necessary as Tokio claims, it should have been sought prior to or during settlement negotiations. Tokio instead rested on its belief that it was entitled to vertical exhaustion based on its selective tender and that it

would not be required to defend or indemnify Kajima in the Farkas litigation.  It was not, in our view, proper for Tokio to sit idle throughout the Farkas settlement negotiations only to raise its objections in a motion for reconsideration.  This is especially true because North River and Grinnell indicated that a settlement would not be possible within the limits of the primary insurers' policies prior to settling the case.

Second, Tokio does not put forth any evidence to suggest that its insured was less culpable than any other named defendant.  The possibility exists that Kajima could have been found mostly or entirely at fault in the underlying lawsuit, perhaps explaining why Tokio did not seek an allocation of fault at the appropriate time.  Thus, we agree with the circuit court that Tokio's allocation argument was untimely, highly speculative and self-serving and find that the circuit court properly denied Tokio's motion to reconsider.

IV. THE SELECTIVE TENDER RULE AND EXCESS COVERAGE

US Fire cross-appeals the circuit court's decision to apply the selective tender rule to the excess insurers of a common insured.  In its declaratory judgment action against Grinnell and Tokio, US Fire sought equitable contribution from Tokio and Grinnell's umbrella policies.  Grinnell settled with US Fire for $500,000 which was paid from its excess policy.  The circuit

court later ruled that the insurers selected by Kajima to defend and indemnify it, including the excess insurers, must do so up to their coverage limits before Kajima's excess policy will be activated.

US Fire points out that there is no published authority in Illinois that specifically addresses how or whether a common insured may selectively tender its indemnity to an excess insurer after exhausting concurrent primary insurance coverage. All published cases related to the selective tender rule have involved fact scenarios where the loss was less than or equal to the available primary concurrent coverage. We additionally note that US Fire supplemented the authority upon which it relies to include this court's recent decision in Kajima. However, in that case, the issue of whether the selective tender rule could be applied to excess insurers was not before us and we did not decide whether the selective tender rule could be applied to the excess layer of coverage. Because the issue is now properly before this court, we hold that once an insured has exhausted its concurrent primary insurance coverage, it may selectively tender its indemnity to concurrent excess insurers.

The selective tender rule, as recognized by Illinois courts, gives an insured covered by multiple concurrent policies the right to choose which insurer will defend and indemnify it with

18

respect to a specific claim.  John Burns Construction Co. v. Indiana Insurance Co., 189 Ill. 2d 570, 574 (2000); Cincinnati Cos. v. West American Insurance Co., 183 Ill. 2d 317, 326 (1998); Kajima, slip op. at 2; Institute of London Underwriters v. Hartford Fire Insurance Co., 234 Ill. App. 3d 70, 78-79 (1992). In Institute of London, this court held that when two insurance policies potentially apply to a loss, an insured may designate one insurer to undertake its defense and indemnity and thereby foreclose the settling insurer from obtaining contribution from the nonsettling insurer.  Institute of London, 234 Ill. App. 3d at 78-79.  Our supreme court has clearly established an insured's right to select exclusive coverage from among multiple concurrent insurance policies.  John Burns, 189 Ill. 2d at 574; Cincinnati, 183 Ill. 2d at 326.  This court and our supreme court have also held that once an insured instructs an insurer not to involve itself in the defense or indemnification of a claim, that insurer " 'would then be relieved of its obligation to the insured with regard to that claim.' "  Bituminous Casualty Corp. v. Royal Insurance Co. of America, 301 Ill. App. 3d 720, 724 (1998), quoting Cincinnati, 183 Ill. 2d at 326.  The insured may choose to forego an insurer's assistance for various reasons, including the insured's fear that premiums would increase or that the policy would be canceled in the future.  Cincinnati, 183 Ill. 2d

at 326 (1998).

An insured has the right to selectively tender its defense and indemnification to one of several common insurers.  Kajima, slip op. at 3.  The "right" to selectively tender, despite its criticism, has been characterized as "paramount."  Legion Insurance Co. v. Empire Fire & Marine Insurance Co., 354 Ill. App. 3d 699, 703 (2004) (explaining that an insured has the paramount right to choose or knowingly forego an insurer's participation in a claim); Alcan United, Inc. v. West Bend Mutual Insurance Co., 303 Ill. App. 3d 72, 79 (1999), quoting Institute of London, 234 Ill. App. 3d at 79 (recognizing the paramount right of the insured " 'to seek or not to seek an insurer's participation in a claim as the insured chooses' ").  See also Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange, 325 Ill. App. 3d 970, 987 (2001) (Quinn, J., specially concurring) (stating "[i]n the vast area of legal jurisprudence, there are undoubtedly many instances where being the first, or only, jurisdiction to grant rights to persons or entities may rightly be a source of pride.  While it is still very early, the doctrine of 'selective tender' does not appear *** to be one of those instances"); American National Fire Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh, 343 Ill. App. 3d 93, 109 (2003) (Quinn, J., specially concurring)

(suggesting that the selective tender rule be tailored in a manner that "will not blindside the insurer" and maintain "the important distinction between primary and excess insurers").

Whether we agree or disagree with the wisdom behind the selective tender rule, our supreme court has clearly indicated that an insured has the right to choose from among its concurrent insurers. We can articulate no reason why this rule cannot or should not be applied to concurrent excess insurance coverage. Neither the John Burns case, nor any other published authority, prohibits an insured's right to select or deselect a particular policy when it has concurrent coverage. In addition, because the selective tender rule is applied only concurrently at either the primary or excess level and not consecutively, the concerns about blurring the line between primary and excess insurance policies is not applicable. Hence, our ruling here maintains the critical distinction between primary and excess insurance policies which we sought to preserve in Kajima slip op. at 5. Moreover, contrary to US Fire's contention, the fact that an excess policy contains an "other insurance" clause does not preempt the selective tender rule. It is not relevant that Tokio or US Fire's policy contains an "other insurance" clause. This was made clear in John Burns. The purpose of an "other insurance" clause is to provide a method of apportioning coverage among

1-05-0606

triggered concurrent policies.  <u>John Burns</u>, 189 Ill. 2d at 576, citing <u>Institute of London</u>, 234 Ill. App. 3d at 77 ("if the policy is never triggered, the issue of liability under the 'other insurance' clause does not arise").

After reviewing the record and considering the authority, we agree with the circuit court that Kajima perfected its selective tender to US Fire.  Thus, the circuit court correctly ruled that the selective tender rule applies to the excess layer of insurance coverage and that US Fire could not seek contribution from Tokio in this case.

### IV. CONCLUSION

For the foregoing reasons, we hold that Kajima was not entitled to vertically exhaust consecutive primary and excess policies notwithstanding its proper selective tender to other concurrent insurers; the circuit court properly denied Tokio's motion for reconsideration; and the selective tender rule was applicable to concurrent excess insurance coverage.  Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

FITZGERALD-SMITH, PJ., and JOSEPH GORDON, J., concur.

22