# Illinois Official Reports

## Appellate Court

---

### *AMCO Insurance Co. v. Cincinnati Insurance Co.*,
### 2014 IL App (1st) 122856

---

| | |
|---|---|
| Appellate Court Caption | AMCO INSURANCE COMPANY, Plaintiff-Appellant, v. CINCINNATI INSURANCE COMPANY, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-12-2856 |
| Filed | May 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal arising from an underlying action for the injuries suffered by an employee on a construction project, the appellate court rejected plaintiff insurer's argument that the targeted tender doctrine gave plaintiff the right, after being designated by the insured in the instant case to provide coverage for the underlying claim and paying the settlement of the claim, to seek contribution from an unselected insurer pursuant to an assignment of the insured's rights, since the insured had no rights to assign to plaintiff after plaintiff paid the full amount of the settlement of the underlying claim. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-41151; the Hon. Mary Anne Mason, Judge, presiding |
| Judgment | Affirmed. |
| Counsel on Appeal | Lindemann, Miller, Siderius, LLP, of Chicago (Jeffrey A. Siderius, of counsel), for appellant.<br><br>Tribler, Orpett & Meyer, P.C., of Chicago (David Schroeder, of counsel), for appellee. |

Panel                    JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Connors and Justice Delort concurred in the judgment and opinion.

## OPINION

¶ 1    This appeal arises from an August 24, 2012 order entered by the circuit court of Cook County which granted defendant-appellee Cincinnati Insurance Company's (Cincinnati) motion to dismiss with prejudice. The trial court's order was entered pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). On appeal, plaintiff-appellant AMCO Insurance Company (AMCO) argues that the trial court erred in granting Cincinnati's motion to dismiss. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                         BACKGROUND

¶ 3    On March 15, 2007, Kevin Smith (Smith) filed a complaint (Smith lawsuit) in the circuit court of Cook County against Hartz Construction Company (Hartz), Cimarron Construction Company, Inc. (Cimarron), and Van Der Laan Brothers, Inc. (Van Der Laan), under case number 07 L 2729. Smith sought damages for injuries he suffered while working on a construction site at Manchester Cove Subdivision in Mokena, Illinois. At the time of his injuries, Smith was employed by Edward Allen Construction (Edward Allen), a subcontractor working on the project at the construction site. Hartz was the general contractor, Cimarron was the carpentry subcontractor, and Van Der Laan was the concrete subcontractor.

¶ 4    As a result of Smith's injuries, multiple insurance policies were triggered. Cincinnati issued a general liability policy to Hartz (Cincinnati policy); Erie issued a general liability policy to Van Der Laan (Erie policy); and AMCO issued both a primary general liability policy (AMCO policy) and an umbrella policy (AMCO umbrella policy) to Cimarron. On May 7, 2008, Hartz, as an additional insured under the AMCO policy, tendered its defense of the Smith lawsuit to Cimarron. The Hartz defense tender stated:

> "On behalf of [Hartz] we are hereby tendering to [Cimarron] and [AMCO] its defense in the [Smith lawsuit] currently pending in the Circuit Court of Cook County Illinois. This tender is being made pursuant to [Hartz's] status as an additional insured under [the AMCO policy] issued to Cimarron ***.
>
> This tender is made to [AMCO] without recourse to [Hartz's] own policy of insurance with [Cincinnati] except as standby coverage should [Cimarron] not fulfill its obligations pursuant to its insurance coverage. It is the expressed intention of [Hartz]

- 2 -

that it be provided with insurance coverage for the [Smith lawsuit] solely though the insurance policy issued to [Cimarron] by [AMCO]."

¶ 5 AMCO accepted Hartz's defense tender subject to a reservation of rights. On December 2, 2009, Hartz also tendered its defense of the Smith lawsuit to Erie, as an additional insured under the Erie policy. Hartz's defense tender to Erie stated:

"On behalf of [Hartz] we hereby request all benefits available to [Hartz] from [Erie] including the right to a defense and indemnity in the [Smith lawsuit] currently pending in the Circuit Court of Cook County Illinois. This request/tender is being made pursuant to [Hartz's] status as an additional insured under [the Erie policy];

Hartz is currently being defended under a reservation of rights by [AMCO], [Cimarron's] carrier. The purpose of this letter is to obtain the additional benefits of a defense and indemnity from Erie in addition to the defense and indemnity being provided by [AMCO]. This request/tender is made to [Erie] without recourse to [Hartz's] own policy of insurance with [Cincinnati] except as standby coverage should [Van Der Laan] or [Cimarron] not fulfill their obligations pursuant to its insurance coverage."

Erie also accepted Hartz's defense tender subject to a reservation of rights.

¶ 6 Subsequently, the parties attempted to settle the Smith lawsuit. On September 3, 2010, Smith's demand was $3.9 million. On September 20, 2010, a mediation was held. The mediator expressed that he believed the matter could be settled for $1.5 million. On September 24, 2010, AMCO stated that it would be willing to contribute $500,000 toward the settlement provided that Cincinnati and Erie agreed to contribute equal amounts. Cincinnati refused to contribute any money toward the settlement. It was Cincinnati's position that Hartz made a "targeted tender" to AMCO and Erie, and AMCO's and Erie's primary policy limits had to be exhausted before Cincinnati would be required to respond. On or around January 18, 2011, Erie stated that it would be willing to contribute $50,000 toward the settlement.

¶ 7 On March 25, 2011, Smith, Hartz, Cimarron and AMCO ended the Smith lawsuit by executing a settlement agreement through which AMCO paid Smith $1,450,000 on behalf of Hartz and Cimarron. AMCO allocated $550,000 to the AMCO policy on behalf of Hartz; $450,000 to the AMCO umbrella policy on behalf of Hartz; and $450,000 to the AMCO policy on behalf of Cimarron. The settlement agreement also contained an assignment of rights by Hartz and Cimarron, which stated, in pertinent part, as follows:

"In consideration of the settlement amount paid by AMCO to [Smith] on behalf of Hartz and Cimarron pursuant to this release and settlement agreement, Hartz and Cimarron agree that, upon execution of this release by all parties and payment of the settlement amount by AMCO to [Smith], any and all rights, claims and causes of action Hartz and/or Cimarron have to recover any sums from [Cincinnati] and/or [Erie] in connection with the claims of [the Smith lawsuit] are assigned, transferred and set over to AMCO. Hartz and Cimarron agree that AMCO may enforce such rights, claims and causes of action in such a manner as may be appropriate for the use and benefit of AMCO, either in its own name or in the names of Hartz and Cimarron."

¶ 8      On December 2, 2011, AMCO filed a complaint for declaratory judgment in the circuit court of Cook County against Erie and Cincinnati. On February 24, 2012, Cincinnati filed a joint motion to dismiss AMCO's complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)) and section 2-606 of the Code (735 ILCS 5/2-606 (West 2010)). Cincinnati's section 2-606 argument was based on the fact that AMCO did not attach a copy of the Cincinnati policy to the complaint as an exhibit or provide an affidavit explaining why a copy of the Cincinnati policy could not be attached. On May 9, 2012, AMCO was granted leave to file an amended complaint. On May 16, 2012, AMCO filed its amended complaint. The complaint counts against Cincinnati included: count II for equitable subrogation; count IV for equitable contribution; and count VI for "other insurance." On May 22, 2012, Cincinnati filed a motion to dismiss the amended complaint pursuant to section 2-615 of the Code. In its motion to dismiss, Cincinnati argued that: due to the "targeted tender" doctrine, AMCO has no valid claims against Cincinnati; and as for claims under the AMCO umbrella policy, the Erie policy must be exhausted before Cincinnati is required to respond.

¶ 9      On August 24, 2012, the trial court heard oral arguments on the motion to dismiss. Following oral argument, the trial court found that the claims against Cincinnati must be dismissed. The trial court found that the equitable subrogation and equitable contribution counts must be dismissed because "once the insured here, Hartz, made its targeted tender to AMCO, the targeted carrier as assignee of the insured post settlement cannot pursue a deselected carrier for [equitable subrogation and equitable contribution]." Also, the court found that those counts were defective because AMCO and Cincinnati insured different risks. Further, as to the "other insurance" count, the court found that the Cincinnati policy was never triggered, and to trigger the Cincinnati policy postsettlement would be an improper extension of the targeted tender doctrine. Accordingly, on that same day, the trial court entered an order that granted Cincinnati's motion to dismiss with prejudice. In its order, pursuant to Rule 304(a), the trial court stated that there was no just reason for delaying either enforcement or appeal of its order. On September 24, 2012, AMCO filed a timely notice of appeal. Therefore, we have jurisdiction to consider AMCO's arguments on appeal pursuant to Rule 304(a) and Illinois Supreme Court Rule 303 (eff. May 30, 2008).

¶ 10                             ANALYSIS

¶ 11      On appeal, we determine whether the trial court erred in granting Cincinnati's motion to dismiss with prejudice.

¶ 12      A motion to dismiss pursuant to section 2-615 of the Code challenges the legal sufficiency of a complaint based on defects apparent on the face of the complaint. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13. In reviewing a section 2-615 motion to dismiss, the reviewing court accepts as true all well-pleaded facts and reasonable inferences that can be drawn from those facts, and construes the allegations in the complaint in the light most favorable to the plaintiff. *Id*. A section 2-615 motion to dismiss is reviewed under the *de novo* standard of review. *Id*.

- 4 -

¶ 13     Before discussing the parties' arguments, it is important to explain the "targeted tender" doctrine. "[T]he 'targeted' or 'selective' tender doctrine allows an insured covered by multiple insurance policies to select or target which insurer will defend and indemnify it with regard to a specific claim." *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102, 107 (2007). Illinois courts have consistently held that an insured has a paramount right to choose or knowingly forego an insurer's participation in a claim. *Richard Marker Associates v. Pekin Insurance Co.*, 318 Ill. App. 3d 1137, 1141 (2001). There are many reasons why an insured may choose to forego a certain insurer's coverage, such as the insured's fear that premiums would increase or the policy would be cancelled in the future. *Id.* When an insured designates one of the insurers to defend, the duty to defend falls solely on the selected insurer. *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 324 (1998). "That insurer may not in turn seek equitable contribution from the other insurers who were not designated by the insured. [Citation.] This rule is intended to protect the insured's right to knowingly forgo an insurer's involvement." *Id.* (citing *Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill. App. 3d 70, 79 (1992)). The insured's right to choose encompasses the right to deactivate coverage from an insurer that was previously selected. *Richard Marker*, 318 Ill. App. 3d at 1143. This can be done for the purpose of invoking exclusive coverage from another insurer. *Id.*

¶ 14     As AMCO points out, the targeted tender doctrine has been criticized in recent years. See *Illinois School District Agency v. St. Charles Community Unit School District 303*, 2012 IL App (1st) 100088, ¶ 37; *American National Fire Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh*, *PA*, 343 Ill. App. 3d 93, 106 (2003) (Quinn, J., specially concurring); *Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange*, 325 Ill. App. 3d 970, 983 (2001) (Quinn, J., specially concurring). This court has noted that only two other states have adopted the targeted tender doctrine. *Illinois School District*, 2012 IL App (1st) 100088, ¶ 37. Accordingly, this court and our supreme court have limited the scope of the targeted tender doctrine and have refused to expand its application to factual circumstances that differ from the circumstances in which the rule was first applied. In *Kajima*, our supreme court refused to extend the targeted tender doctrine to a situation in which the insured attempted to target only its excess policies before exhausting its primary policies. *Kajima*, 227 Ill. 2d at 116. The supreme court reasoned that "[e]xtending the targeted tender rule to require an excess policy to pay before a primary policy would eviscerate the distinction between primary and excess insurance." *Id.*

¶ 15     Likewise, in *Illinois School District*, the defendant school district was covered by multiple insurance policies, all of which ran consecutively to each other. *Illinois School District*, 2012 IL App (1st) 100088, ¶ 4. Before this court, the school district argued that under the targeted tender doctrine, the plaintiff insurer could not make a claim for equitable contribution because the plaintiff was selected over the other insurance policies that provided coverage before it in time. *Id.* ¶ 36. This court refused to extend the targeted tender doctrine to a situation in which an insured's multiple policies provided coverage *consecutively* to each other rather than running *concurrently* to each other. *Id.* ¶ 39. This court reasoned that there was no supreme court precedent that allowed for the extension of the targeted tender doctrine. *Id.* Thus, Illinois

precedent disfavors expanding the targeted tender doctrine beyond its originally intended scope. Both parties argue that this court should decline to expand the targeted tender doctrine. However, they have different interpretations as to what constitutes expansion of the rule.

¶ 16 AMCO argues that the trial court erred in granting Cincinnati's motion to dismiss because Hartz relinquished its right to make a target tender. In this case, Hartz selectively tendered its defense to AMCO and Erie only. AMCO argues that at that time, pursuant to *Richard Marker*, Hartz still possessed the right to deactivate its target tender to AMCO. Subsequently, the settlement agreement was executed and Hartz assigned all of its rights to AMCO. AMCO argues that among the rights that Hartz assigned, was the right to deactivate any previous target tenders. AMCO contends that because it was assigned Hartz's right to deactivate previous target tenders, Hartz's original tender to AMCO is negated and AMCO can seek contribution from Cincinnati. AMCO claims that by assigning its rights, Hartz chose to forego coverage with AMCO and deactivated any previous target tenders. AMCO asserts that contrary to the trial court's belief, "this result simply recognizes a logical endpoint of [the targeted tender doctrine]."

¶ 17 Additionally, AMCO argues that if this court adopts the trial court's and Cincinnati's interpretation of the targeted tender doctrine, the rule will be expanded beyond its intended scope. AMCO contends that the rule would be expanded because this court would be allowing Hartz's target tender to AMCO to survive *after* it assigned all of its rights to AMCO. AMCO claims that when Hartz gave up its right to knowingly forego an insurer's involvement, the reason for the targeted tender doctrine was at an end. Thus, AMCO argues that it should be allowed to pursue claims of equitable contribution, equitable subrogation, and "other insurance" against Cincinnati.

¶ 18 Further, AMCO argues that even if Hartz's target tender is upheld, AMCO should be allowed to pursue claims against Cincinnati. In support of its argument, AMCO points out that its settlement payment of $1,450,000 exceeded its policy limit of $1 million. AMCO also cites *Kajima* for the following rule: "to the extent that defense and indemnity costs exceed the primary limits of the targeted insurer, the deselected insurer or insurers' primary policy must answer for the loss before the insured can seek coverage under an excess policy." *Kajima*, 227 Ill. 2d at 117. Thus, AMCO argues that assuming the Cincinnati policy provides primary insurance to Hartz, the Cincinnati policy and Erie policy would be responsible to pay before any excess coverage, such as the AMCO umbrella policy, was triggered. AMCO notes that Cincinnati did not provide a copy of its policy so it is unclear if the policy provides primary coverage. Nevertheless, AMCO argues that the priority of coverage between the Cincinnati policy and Erie policy has yet to be determined. Accordingly, AMCO contends that its claims against Cincinnati must be allowed to proceed so that the priority of coverage between Cincinnati and Erie can be determined. Therefore, AMCO argues that the trial court erred in granting Cincinnati's motion to dismiss with prejudice.

¶ 19 In response, Cincinnati argues that the trial court did not err in granting its motion to dismiss on several grounds. First, Cincinnati argues that the right to target an insurer should end with the resolution of the underlying claim. Cincinnati contends that AMCO's position requires that an insured's right to select and deselect insurers continues past the point where the

- 6 -

claim is completely resolved and has been paid by the targeted insurer. Cincinnati asserts that Hartz's assignment of rights to AMCO conveyed no rights in relation to Cincinnati because when the assignment took effect, the Smith lawsuit was completely settled. Cincinnati notes that AMCO cites *Richard Marker* in support of its argument that a targeted insurer can be deselected after a claim is settled. However, Cincinnati argues that *Richard Marker* is distinguishable from the instant case. As Cincinnati points out, *Richard Marker* involved a situation in which multiple insurers refused to defend the insured, and the insured had to defend and settle the underlying lawsuit with his own funds. *Richard Marker*, 318 Ill. App. 3d at 1139. The insured then deselected one insurer and decided to target another insurer. *Id*. This court held that the targeted tender doctrine allowed Marker to target the insurer of his choice even after the lawsuit was settled. *Id*. at 1143-44. As Cincinnati points out, the trial court found that *Richard Marker* is distinguishable from this case. The trial court stated:

> "Marker was the insured himself making the payment. He had two carriers who both refused to defend. Once he made the payment, he decided to [deactivate Statewide] and *** target tender to Pekin.
>
> That's an entirely different factual situation than AMCO taking an assignment from the insured after AMCO has paid, AMCO who is on the hook, you know, pursuant to the terms of its policies and AMCO deciding I'm going to deactivate the tender on behalf of Hartz. [*Richard Marker*] doesn't support that extension I don't think."

Thus, Cincinnati argues that *Richard Marker* does not apply to the situation in this case where the "targeted insurer that defends the insured and pays the settlement *** then subsequently attempts to deselect itself and target another insurer."

¶ 20 Next, Cincinnati argues that AMCO's position undercuts the rationale of the targeted tender doctrine. Cincinnati contends that the purpose of the doctrine is to give the insured control over which of the insurers will defend him in a lawsuit. Cincinnati claims that once an insurer has been targeted and the case against the insured is settled, all liability is eliminated and the reason for the target tender disappears. Thus, Cincinnati asserts that there is no reason for an insured to continue to be able to target and deselect insurers once the underlying case is completely resolved by a targeted insurer. Cincinnati contends that after AMCO paid the $1,450,000 settlement, there was nothing left at stake for Hartz and no reason for it to continue to have any right to target and deselect insurers. Also, Cincinnati argues that if AMCO prevails, it would completely defeat Hartz's reason to target AMCO. Cincinnati points out that there are many reasons why an insured would choose to forego coverage by certain insurers, including fear that premiums would be increased in the future. *Cincinnati Cos.*, 183 Ill. 2d at 324. Cincinnati asserts that Hartz decided not to target Cincinnati, Hartz's own insurer, and instead decided to target AMCO in order to avoid a negative history with Cincinnati. However, Cincinnati argues that if AMCO is now successful on appeal, then Hartz's whole reason for choosing not to target Cincinnati is defeated.

¶ 21 Additionally, Cincinnati argues that AMCO is confused about the impact of Hartz's assignment of rights. Cincinnati argues that Hartz did not assign its right to select and deselect insurers to AMCO. Rather, the assignment of rights states "[a]ny and all rights, claims and causes of action Hartz *** [has] to recover any sums from [Cincinnati] and/or [Erie] in

- 7 -

connection with the claims of [the Smith lawsuit] are assigned, transferred and set over to AMCO." Cincinnati points out that Hartz's defense and settlement were paid by AMCO and Erie. Thus, Cincinnati contends that at the time the assignment took effect, Cincinnati owed Hartz nothing. If Cincinnati owed Hartz nothing, then the assignment of rights to recover sums from Cincinnati would be meaningless.

¶ 22    Further, Cincinnati argues that if this court adopts AMCO's interpretation of the targeted tender doctrine, the doctrine will be expanded beyond its intended scope. Cincinnati argues that AMCO wants the right to target tender to be assignable. Cincinnati asserts that there is no case law whatsoever supporting this proposition. Also, Cincinnati claims that AMCO's interpretation of the targeted tender doctrine would render the rule meaningless. Cincinnati points out that Hartz specifically decided not to target Cincinnati. As such, Cincinnati was forbidden to participate in the Smith lawsuit or settlement agreement. Cincinnati contends that if AMCO prevails and is essentially allowed to deselect itself as the targeted insured, then the targeted tender doctrine would be nullified.

¶ 23    Finally, Cincinnati responds to AMCO's argument that its claims against Cincinnati should proceed in order to determine the priority of coverage between Cincinnati and Erie. Cincinnati argues that AMCO's argument is flawed because AMCO overlooked the crucial fact that Hartz specifically targeted Erie for coverage in addition to AMCO, and it is undisputed that Erie accepted that tender. Cincinnati points out that AMCO's *Kajima* citation only states that primary policies must be exhausted before excess policies. *Kajima*, 227 Ill. 2d at 116-17. However, Cincinnati contends that under the targeted tender doctrine, the *targeted* insurers (in this case, AMCO and Erie) are responsible for any costs associated with the insured's underlying lawsuit. Cincinnati points out that the limit of the Erie policy is $1 million. Thus, Cincinnati contends that if AMCO is seeking contribution for the $450,000 it paid in excess of its policy limit, then Erie would be required to pay and the Erie policy would easily cover that amount. Thus, Cincinnati argues that the trial court did not err in granting its motion to dismiss with prejudice.

¶ 24    We agree with Cincinnati's arguments. Despite the parties' multiple arguments, the outcome of this case is determined by the resolution of one main issue: whether the targeted tender doctrine allows insurers to deselect themselves as targeted insurers following the settlement of the insured's underlying lawsuit. We find that the targeted tender doctrine cannot be interpreted in such a way. Illinois courts have made it clear that the targeted tender doctrine should be narrowly applied to the types of factual situations for which it was originally intended. There is no supreme court or appellate court precedent that allows for the application of the targeted tender doctrine under AMCO's interpretation. Even AMCO's most beneficial case, *Richard Marker*, only allowed the targeted tender doctrine to be applied to *an insured's* right to deselect an insurer following a settlement that the insured paid for himself. *Richard Marker*, 318 Ill. App. 3d at 1143-44. Thus, *Richard Marker* is distinguishable from this case and does not apply.

¶ 25    As Cincinnati argues, AMCO's interpretation of the targeted tender doctrine would nullify the doctrine. The point of the doctrine is to allow the insured to select which insurer it wants to target for defense of an underlying lawsuit. Under AMCO's interpretation, a targeted insurer

- 8 -

could simply settle the underlying lawsuit contingent on the assignment of the insured's rights, and then seek contribution from every other insurer that was not originally targeted. The entire purpose of the targeted tender doctrine would be eviscerated. Moreover, we agree with Cincinnati's argument that after AMCO paid the full amount of the settlement, Hartz no longer had any claims to recover money from Cincinnati. Thus, Hartz's assignment of "[a]ny and all rights, claims and causes of action Hartz *** [has] to recover any sums from [Cincinnati]," was essentially meaningless. Therefore, we disagree with AMCO's interpretation of the targeted tender doctrine and decline the invitation to interpret it to allow AMCO to recover against Cincinnati.[1] Accordingly, we hold that the trial court did not err in granting Cincinnati's motion to dismiss with prejudice.

¶ 26    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 27    Affirmed.

---

[1]We are likewise unpersuaded by AMCO's argument that its claims against Cincinnati should proceed in order to determine the priority of coverage between Cincinnati and Erie. Hartz clearly tendered its defense of the Smith lawsuit to AMCO and Erie. Thus, applying the targeted tender doctrine, Erie would be required to pay any costs of the settlement to the fullest extent of its policy before the Cincinnati policy could be triggered.