2016 IL App (1st) 142660

FIRST DIVISION
FEBRUARY 16, 2016

No. 1-14-2660

| | | |
|---|---|---|
| AMCO INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CH 41151 |
| | ) | |
| ERIE INSURANCE EXCHANGE, | ) | Honorable |
| | ) | Jean Prendergast Rooney, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Liu and Justice Connors concurred in the judgment.

## OPINION

¶ 1    This appeal arises from the August 4, 2014 order entered by the circuit court of Cook County, which granted summary judgment in favor of defendant Erie Insurance Exchange (Erie) and denied a cross-motion for summary judgment filed by plaintiff AMCO Insurance Company (AMCO), in a declaratory judgment action between the two insurers.  On appeal, AMCO argues that the circuit court erred in granting summary judgment in favor of Erie.  For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                BACKGROUND

¶ 3    On March 15, 2007, Kevin Smith (Smith) filed a negligence action against Hartz Construction Company (Hartz), KT Richards Construction Company (KT), and G&M Mason Construction Company (G&M), for injuries Smith sustained when he fell while working at a construction site at 19140 Crescent Drive in Mokena, Illinois (the underlying action).  On April

15, 2008, Smith filed a second amended complaint in the underlying action, naming only Hartz and Cimarron Construction Company, Inc. (Cimarron) as defendants.

¶ 4       On June 27, 2008, Smith filed a third amended complaint in the underlying action against Hartz, Cimarron, and named as a defendant for the first time, Van Der Laan Brothers, Inc. (VDL).  In the third amended complaint, Smith alleged that, on March 22, 2005, he was injured as a result of negligent installation and placement of anchor bolts at the construction site.  At the time of his injuries, Smith was employed by Edward Allen Construction (Edward Allen), a subcontractor working on the project at the construction site.  Hartz was the general contractor in the construction project, Cimarron was the carpentry subcontractor, and VDL was the concrete subcontractor.  The construction project consisted of building residential homes in a subdivision.

¶ 5       At the time of Smith's accident, several insurance policies were in effect.  Hartz, as general contractor, had a general liability policy issued by Cincinnati Insurance Company (Cincinnati) (the Cincinnati policy).  Cimarron had both a primary general liability policy and an umbrella policy issued by AMCO (the AMCO policy).  VDL had a general liability policy issued by Erie (the Erie policy).  Hartz was also insured as an additional insured under the AMCO policy, and Hartz had a certificate of insurance indicating that it had coverage through VDL under the Erie policy.

¶ 6       Under the Erie policy, an insured must give notice to Erie of a claim pursuant to the following policy provision:

> "2. **Duties in the Event of Occurrence, Offense, Claim or Suit**
>
>        a. You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim.  \*\*\*

b. If a claim is made or 'suit' is brought against any insured, you must:

1) Immediately record the specifics of the claim or 'suit' and the date received; and

2) Notify us as soon as practicable

You must see to it that we receive written notice of the claim or 'suit' as soon as practicable.

c. You and any other involved insured must:

1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit' ***."

The Erie policy also contained the following endorsement for additional insureds:

"**A. Section II – Who is an Insured** is amended to include as an insured any person or organization for whom you are performing operations and for whom a Certificate of Insurance with additional insured status has been issued. Such person or organization is an insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are complete.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

2. **Exclusions**

This insurance does not apply:

a. 'Bodily injury'; 'property damage' or 'personal and advertising injury' arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

(1) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

(2) Supervisory, inspection, architectural or engineering activities.

b. 'Bodily injury'; or 'property damage' occurring after:

(1) All work, including materials, parts of equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of 'your work' out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

C. With respect to coverage provided by this endorsement, the following is added to **Section IV – Commercial General Liability Conditions:**

**Certificates of Insurance**

Coverage will only apply if the Certificate of Insurance has been issued prior to the loss."

The Erie policy also contains the following relevant language:

"Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words 'we,' 'us' and 'our' refer to the company providing this insurance.

The word 'insured' means any person or organization qualifying as such under Section II – Who is An Insured."

¶ 7 On May 7 2008, prior to Smith's filing of the third amended complaint in the underlying action, Hartz, as an additional insured under the AMCO policy, tendered its defense of the underlying action to AMCO, which accepted under a reservation of rights.

¶ 8 On December 2, 2009, Hartz, as the holder of a certificate of insurance under the Erie policy, tendered its defense of the underlying action to Erie in a letter to VDL's defense counsel. In the letter, Hartz stated that it was an additional insured under the Erie policy; that it was then currently being defended under a reservation of rights by Cimarron's insurer [AMCO]; and that the purpose of the letter was to obtain the additional benefits of a defense and indemnity from

Erie in addition to the defense and indemnity being provided by AMCO. Thereafter, Erie accepted Hartz's defense tender subject to a reservation of rights.

¶ 9 On March 25, 2011, AMCO settled the underlying action with Smith for the total amount of $1,450,000: $1 million on behalf of Hartz and $450,000 on behalf of Cimarron. Of the $1 million settlement amount paid on behalf of Hartz, AMCO allocated $550,000 to be paid under AMCO's primary policy and $450,000 to be paid under the AMCO umbrella policy. The settlement agreement also contained an assignment of rights by Hartz and Cimarron, by which Hartz and Cimarron agreed that any rights, claims and causes of action they had to recover any sums from Cincinnati and Erie in connection with the claims of the underlying action shall be assigned and transferred to AMCO. Erie eventually settled the underlying action on behalf of VDL for $5,000, but did not reimburse AMCO for any portion of the settlement amount that AMCO had paid on behalf of Hartz.

¶ 10 On December 2, 2011, AMCO filed a complaint for declaratory judgment against Erie and Cincinnati, seeking contribution for the $1 million settlement amount paid by AMCO on behalf of Hartz in the underlying action. On May 16, 2012, AMCO filed an amended complaint for declaratory judgment, seeking the same relief under the theories of equitable subrogation, equitable contribution, and "other insurance" against Erie (counts I, III, and V) and Cincinnati (counts II, IV, and VI). On August 24, 2012, the circuit court granted Cincinnati's motion to dismiss with prejudice, finding that Hartz had made a "targeted tender" to AMCO and that the Cincinnati policy was never triggered. On May 5, 2014, this court affirmed the circuit court's dismissal of the counts against Cincinnati in the amended complaint for declaratory judgment. See *AMCO Insurance Co. v. Cincinnati Insurance Co.*, 2014 IL App (1st) 122856.

¶ 11   In February 2014, AMCO and Erie filed cross-motions for summary judgment.  In its motion for summary judgment, AMCO argued that Hartz was an additional insured under the Erie policy and, therefore, Erie is liable to AMCO for one-half of the settlement amount AMCO paid on behalf of Hartz in the underlying action, as well as one-half of the defense costs it incurred in defending Hartz against Smith in the underlying action.  In its motion for summary judgment, Erie argued that Hartz was not an additional insured under the Erie policy because Hartz's notice to Erie of the underlying action was untimely as a matter of law and because Hartz's liability did not "arise out of" VDL's work for Hartz.  Erie also argued that because, at the time of Smith's accident, VDL had already completed the work out of which Hartz's alleged liability arose, Hartz was no longer an additional insured under the Erie policy.

¶ 12    On July 29, 2014, a hearing on the parties' cross-motions for summary judgment was held.  On August 4, 2014, the circuit court granted summary judgment in favor of Erie and against AMCO, on the basis that Hartz's notice to Erie about the underlying action was untimely as a matter of law.

¶ 13    On August 28, 2014, AMCO filed a timely notice of appeal.  Accordingly, we have jurisdiction over this appeal.

¶ 14                              ANALYSIS

¶ 15    On appeal, we determine whether the circuit court erred in granting summary judgment in favor of Erie and against AMCO, which we review *de novo*.  See *Collins v. St. Paul Mercury Insurance Co.*, 381 Ill. App. 3d 41, 45 (2008).

¶ 16    AMCO argues that Hartz's notice of the underlying action to Erie was reasonable and timely under the circumstances and that Erie received actual notice of the underlying action within a reasonable time.  AMCO further argues that the Erie policy did not preclude coverage to

Hartz, because VDL's operations at the construction site were ongoing and had not yet been completed at the time of Smith's accident, and the underlying action arose out of VDL's work performed for Hartz at the site. AMCO contends that Erie was liable to AMCO based on equitable contribution and the "other insurance" clauses of their policies. AMCO requests that this court reverse the circuit court's order and enter judgment in favor of AMCO by holding Erie liable to AMCO for $500,000 plus one-half of the costs incurred by AMCO in defending Hartz in the underlying action or, alternatively, reverse the circuit court's order and remand for further proceedings.

¶ 17 Erie counters that the circuit court did not err in granting summary judgment in its favor, where Hartz did not tender its defense to Erie under the Erie policy until nearly three years after Smith filed the underlying action and the tender was thus untimely as a matter of law. Erie argues that the "actual notice" rule had no relevance here, and that even if this court considered AMCO's "actual notice" argument, a 16-month delay between the filing of Smith's original complaint in the underlying action and the time Erie received "actual notice" of the action was also unreasonable as a matter of law. Erie further argues that the Erie policy was not triggered to provide any coverage to Hartz because Smith's injuries did not arise out of VDL's ongoing operations at the construction site, but rather, at the time of Smith's accident, VDL had already completed the work out of which Smith's injury allegedly arose. Erie further contends that AMCO was not entitled to recover under the theory of equitable contribution because AMCO and Erie insured against different risks, and that AMCO could not recover under the "other insurance" clauses of the policies.

¶ 18 In this case, AMCO's amended declaratory judgment complaint sought contribution from Erie for the $1 million settlement amount paid by AMCO in the underlying action, under the

theories of equitable subrogation,[1] equitable contribution, and "other insurance" against Erie (counts I, III and V).[2] In granting summary judgment in favor of Erie and against AMCO, the circuit court found that Hartz's notice to Erie regarding the underlying action was untimely as a matter of law. In light of the circuit court's ruling, it did not address the other arguments raised by the parties.

¶ 19 Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). In considering a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party. *Pielet v. Pielet*, 2012 IL 112064, ¶ 29. "The purpose of summary judgment is not to try a question of fact, but to determine whether one exists" that would preclude the entry of judgment as a matter of law. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421 (2002). "Thus, although the nonmoving party is not required to prove his case in response to a motion for summary judgment, he must present a factual basis that would arguably entitle him to judgment." *Id.* at 432. When parties file cross-motions for summary judgment, as was the case here, they agree that only a question of law is involved and invite the court to decide the issues based on the record. See *Pielet*, 2012 IL 112064, ¶ 28. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary

---

[1] On appeal, AMCO has abandoned its theory of recovery under "equitable subrogation"; thus, those arguments are forfeited for appellate review. See *Sekerez v. Rush University Medical Center*, 2011 IL App (1st) 090889, ¶ 81 (failure to raise arguments or cite legal authority is a violation of Rule 341(h)(7) and results in forfeiture of the issue).

[2] As noted, counts II, IV and VI were brought against Cincinnati, which were eventually dismissed with prejudice on August 24, 2012.

judgment." *Id.* A reviewing court may affirm a circuit court's grant of summary judgment on any basis apparent in the record, regardless of whether the circuit court relied on that basis or whether the court's reasoning was correct. *Harlin v. Sears Roebuck & Co.*, 369 Ill. App. 3d 27, 31-32 (2006).

¶ 20    Resolution of the issue regarding timeliness of notice turns on the interpretation of the Erie policy terms. The construction of an insurance policy is a question of law subject to *de novo* review. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479-80 (1997). In construing the language of the policy, a court must ascertain and give effect to the intention of the parties as expressed in their agreement. *Id.* at 479. In order to ascertain the meaning of the policy's language and the parties' intent, the court must construe the policy as a whole and "take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Id.* If the words of a policy are clear and unambiguous, a court must afford them their plain and ordinary meaning. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). Conversely, if the language of the policy is susceptible to more than one meaning, it is considered ambiguous and will be construed strictly against the insurer and in favor of the insured. *Koloms*, 177 Ill. 2d at 479. However, a reviewing court will not strain to find ambiguity where none exists. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 293 (2001).

¶ 21    In order to trigger the Erie policy at bar, Hartz, as a putative additional insured, had a duty to timely notify Erie of the underlying action. A notice provision in an insurance policy is a "condition precedent" to the triggering of the insurer's contractual duties. *Northern Insurance Company of New York v. City of Chicago*, 325 Ill. App. 3d 1086, 1091 (2001). When the insured fails to comply with the provision to give notice, "the insurer may be relieved from its duty to

defend and indemnify the insured under the policy." *Id.* The purpose of a notice requirement in an insurance policy is to enable the insurer to conduct a timely and thorough investigation of the insured's claim. *Kerr v. Illinois Central R.R. Co.*, 283 Ill. App. 3d 574, 585 (1996). Whether notice has been given within a reasonable time depends on the facts and circumstances of each case. *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311-12 (2006). However, where, as here, the facts are undisputed, the reasonableness of notice to an insurer by its insured is a question of law. *Kerr*, 283 Ill. App. 3d at 583.

¶ 22 Under the Erie policy, an insured must give notice to Erie of a claim pursuant to the following policy provision:

"2. **Duties in the Event of Occurrence, Offense, Claim or Suit**

a. You must see to it that we are notified *as soon as practicable* of an 'occurrence' or an offense which may result in a claim. \*\*\*

c. You and any other involved insured must:

1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit' \*\*\*." (Emphasis added.).

A policy condition requiring notice "as soon as practicable" has been interpreted by our supreme court to mean "within a reasonable time." *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill. 2d 278, 282 (1974). Illinois courts consider several factors to determine whether an insured's delay in notifying the insurer is reasonable: (1) the specific language of the policy's notice provision; (2) the degree of the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of a lawsuit that may trigger insurance coverage;

(4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer. *Livorsi Marine, Inc.*, 222 Ill. 2d at 313; *Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc.*, 313 Ill. App. 3d 457, 466 (2000).

¶ 23    In the case at bar, it is undisputed that on March 15, 2007, Smith filed his original complaint in the underlying action naming general contractor Hartz as a defendant.  It is also undisputed that on June 27, 2008, Smith filed a third amended complaint in the underlying action against Hartz, Cimarron (carpentry subcontractor), and also named VDL (concrete subcontractor) as a defendant for the first time.  The parties also do not dispute that Hartz tendered a formal notice of the underlying action to Erie for coverage on December 2, 2009, almost three years after the initial filing of Smith's underlying action against Hartz.

¶ 24    We find that the first factor under the reasonableness analysis weighs in favor of Erie. The notice requirement in the Erie policy clearly and expressly states that notice of a lawsuit must be given "as soon as practicable" and that copies of any demands, notices, summonses or legal papers relating to a claim or lawsuit must be "immediately" sent to Erie.  Section II of the Erie policy states that an "insured" includes any person or organization for whom VDL was performing operations and for whom a certificate of insurance had been issued.  As a holder of a certificate of insurance under the Erie policy and for which VDL, as the concrete subcontractor, performed work at the construction site, Hartz was considered an additional insured whose compliance with the notice provision was required under the Erie policy.  AMCO does not challenge Hartz's requirement to comply with the notice provision of the Erie policy, but argues that its notice was timely and reasonable under the circumstances.  Here, although Hartz was named as a defendant in Smith's original complaint filed on March 15, 2007, Hartz did not tender the underlying lawsuit to Erie until almost three years later on December 2, 2009.  This delay of

almost three years, could not realistically be deemed an "immediate" submission of the complaint to Erie. Thus, the notice provision in the Erie policy was violated as a result of Hartz's failure to *immediately* send Erie copies of any demands, notices, summonses or legal papers it received in connection with the underlying action. Further, Hartz's delay in tendering its defense of the underlying action to Erie on December 2, 2009, was untimely as a matter of law. See *Livorsi Marine, Inc.*, 222 Ill. 2d 303 (upholding summary judgment ruling in favor of insurer where insured delayed for 21 months before giving notice of the underlying lawsuit); *Northbrook Property & Casualty Insurance Co.*, 313 Ill. App. 3d 457 (affirming summary judgment in favor of insurer where insured's 17-month delay in notifying insurer of lawsuit was unreasonable, thus absolving insurer of any obligation to provide defense costs or indemnification under policies). We note that although Erie undoubtedly knew about the underlying action in July 2008 after it received a copy of Smith's third amended complaint naming its primary insured, VDL as a defendant, that fact did not negate Hartz's duty to notify Erie of the lawsuit "as soon as practicable" and did not change the fact that another 17 months transpired before Hartz finally and formally tendered its defense of the underlying lawsuit to Erie in December 2009. Therefore, based on the clear language of the notice provision, we find that the first factor weighs in favor of Erie.

¶ 25   With respect to the second factor, we find that it also weighs in favor of Erie. Viewing the record in a light most favorable to AMCO, we find that Hartz was not unsophisticated in commerce and insurance matters. The record shows that Hartz was a general contractor of the construction project at issue in the underlying action. Hartz's general counsel, Elaine Pochiro (Pochiro), stated in her deposition testimony that on previous occasions, she had personally made about six claims to Hartz's insurers for defense under those policies. Pochiro testified in her

deposition that she understood the importance of timely notifying Hartz's insurer of any lawsuits naming Hartz as a defendant because "there's a time on these policies within which you must make a report or an incident report or a claim. It's part of the contract between the insurance company and the insured." Pochiro had also advised Hartz's president, Donald Hartz (President Hartz), that claims should be made within certain specified periods to meet Hartz's obligations to comply with the notice terms of the insurance policy. In his deposition testimony, President Hartz acknowledged that Hartz should contact its insurer once any claims are made against it. In fact, the record shows that Hartz, as an additional insured, had tendered notice to other insurers—West Bend Mutual Insurance Company (West Bend), Country Mutual Insurance Company (Country Mutual) and AMCO—within one month after their respective primary insureds[3] were named as defendants in the underlying action. Therefore, we conclude that Hartz possessed a high degree of sophistication in matters of commerce and insurance. Therefore, this factor weighs in favor of Erie.

¶ 26    Likewise, we find that the third factor under the reasonableness analysis—regarding the insured's awareness of a lawsuit that may trigger insurance coverage—weighs in favor of Erie, where there is no dispute that Hartz knew of Smith's underlying action in March 2007.

¶ 27    With respect to the fourth factor regarding the insured's diligence in ascertaining whether policy coverage is available, we find that it weighs in favor of Erie. The record shows that Hartz required its subcontractor, VDL, to execute an insurance contract obligating VDL to name Hartz as an additional insured on VDL's insurance policy with Erie. The insurance contract was

---

[3] West Bend was the primary insurer for G&M and Country Mutual was the primary insurer for KT. KT and G&M were named as defendants along with Hartz in Smith's original March 15, 2007 complaint. As noted, AMCO was the primary insurer for Cimarron, which was named as a defendant along with Hartz in the April 15, 2008 second amended complaint. Hartz was the additional insured on each of the West Bend, Country Mutual and AMCO policies.

executed before the start of the construction project at issue in the underlying action. According to the deposition testimony of Hartz's chief financial officer, Michael Gembara (CFO Gembara), Hartz required subcontractors to provide Hartz with a certificate of insurance naming Hartz as an additional insured before commencing work for Hartz. He noted that subcontractors who fail to comply with this requirement would not be allowed to begin the construction work. According to Pochiro, when Hartz originally received the underlying Smith complaint in 2007, Hartz searched its files for any certificates of insurance "that would have been in effect at [the] time" of Smith's accident. She admitted that Hartz had a certificate of insurance on file for VDL at the time Smith filed his original underlying complaint in March 2007. Further, the record shows that in August 2008, two months after Smith filed the third amended complaint naming VDL as a defendant, Pochiro conducted a search in Hartz's files for an insurance contract with VDL "that would give [Hartz] another source of insurance representation." The original March 15, 2007 complaint in the underlying action alleged that the defendants "[f]ailed to properly place and/or install [] anchor bolts in a safe, suitable and proper manner so as to give proper and adequate protection"; "[k]new or should have know[n] of the presence of the anchor bolts and that they constituted a tripping hazard to the plaintiff" and "created a hazard by having the anchor bolts installed in an unsafe manner." The record shows that VDL was the concrete subcontractor hired by Hartz pursuant to a purchase order to complete work with respect to foundations, basement floors, garage floors and stoops for the construction project. VDL also installed the anchor bolts, which helped secure the house or deck to the foundation, pursuant to Hartz's blueprints. Thus, although VDL was not named as a defendant in Smith's original March 2007 complaint, Hartz reasonably could have compared the allegations in the original complaint to the certificate of insurance for VDL, and ascertained that policy coverage under the Erie policy was available.

Contrary to AMCO's arguments, VDL's presence at the construction site at the time of the accident did not matter. Hartz knew that VDL installed the anchor bolts referenced in Smith's complaint and knew that it had a certificate of insurance for coverage through VDL under the Erie policy. Yet, Hartz did not tender its defense of the underlying action to Erie until almost three years after the March 2007 underlying complaint was filed by Smith. Even after VDL was named as a defendant in Smith's June 27, 2008 third amended complaint, Hartz still waited another 18 months before giving notice and tendering its defense to Erie.

¶ 28     AMCO argues that Hartz's delay in notifying Erie of the underlying action was excusable because there was confusion as to whom Smith's employer, Edward Allen, worked for and how they were involved in the construction project. AMCO points to Pochiro's deposition testimony, in which she stated that Edward Allen was not a subcontractor of Hartz's; that it took some time for Hartz to sort out which insurance company to tender the complaint to in light of the confusion about Edward Allen's involvement in the construction project; and that the confusion was not resolved until "certain facts came out" in the discovery process which were not known at the time the underlying action was filed—including that Edward Allen was brought onto the site by one of Hartz's subcontractors. However, we find that whether Hartz knew which of its subcontractors was responsible for bringing Edward Allen onto the jobsite had no bearing on the fact that the allegations regarding anchor bolts in the underlying complaint should have alerted Hartz to the issue of VDL's work, and had no relevance as to whether Hartz knew it had coverage through VDL under the Erie policy and to its duty to timely notify Erie of the underlying action. Indeed, when asked to explain how the knowledge of Edward Allen's involvement in the construction project affected Hartz's decision to delay tender to Erie, Pochiro could only theorize that "the only explanation" she could think of was that knowing which

subcontractor brought Edward Allen onto the jobsite went directly to the question of whose insurance contract would cover the claim. However, this does not explain why even after VDL was named a defendant in Smith's June 2008 third amended complaint, which again alleged the failure to properly install the anchor bolts and Hartz presumably knew the Erie policy was triggered, yet still waited another 18 months before tendering its defense of the underlying action to Erie. Further, Pochiro's conjecture as to the reason behind Hartz's delayed tender to Erie was inconsistent with the fact that, despite not knowing at that time which of its subcontractors brought Edward Allen onto the construction project, Hartz tendered its defense of the underlying action to AMCO as an additional insured under the AMCO policy within a month after AMCO's insured, Cimarron, was named for the first time as a defendant in the second amended complaint. Therefore, we find that the fourth factor in the reasonableness analysis weighs against AMCO.

¶ 29　With respect to the fifth factor—prejudice to the insurer—we find that it weighs in favor of Erie. As our supreme court held, prejudice is but one factor in the reasonableness analysis; however, even if there is a lack of prejudice to the insurer, the insured must still give reasonable notice according to the terms of the insurance policy. *Livorsi Marine, Inc.*, 222 Ill. 2d at 313, 316-17, citing *Simmon v. Iowa Mutual Casualty Co.*, 3 Ill. 2d 318 (1954). AMCO argues that Erie suffered no prejudice as a result of Hartz's delay in giving notice to Erie, by pointing out that "anything of substance," such as the depositions of Smith, James Venhuizen (president of Cimarron) and Jerald Van Der Laan (president of VDL) in the underlying action, did not take place until after Erie first became involved in the underlying action as a result of its named insured, VDL, being named as a defendant in the June 27, 2008 third amended complaint. We reject this contention. Although Erie first became involved in the underlying action when its

defense counsel filed an appearance on behalf of VDL in July 2008[4] and Erie eventually settled the underlying action on behalf of VDL, the above-mentioned depositions were all taken *before* Hartz tendered a defense of its claim to Erie in December 2009. By the time Hartz requested a defense from Erie, discovery was nearly complete and almost three years had passed since Hartz was initially named as a defendant in the underlying action, and Erie did not have the opportunity to investigate or to develop a defense on behalf of Hartz. See *Kerr*, 283 Ill. App. 3d 574, 585 (1996) (the purpose of a notice requirement in an insurance policy is to enable the insurer to conduct a timely and thorough investigation of the insured's claim). As discussed, even after Erie became involved in defending VDL in the underlying action, Hartz did not notify Erie of its desire for a defense by Erie until about another 17 months had transpired. Therefore, we find that the fifth factor in the reasonableness analysis weighs in favor of Erie. Accordingly, in examining the five factors, we find that Hartz's delay in notifying Erie of the underlying action by tendering its defense to Erie almost three years after Smith filed the underlying action against Hartz and 18 months after VDL was named as a defendant, was unreasonable. See *Kerr*, 283 Ill. App. 3d at 585 ("[c]ompliance with the notice provision is a condition precedent to coverage and if breached, the insurer will not be liable under the policy, even if there was no showing in fact of prejudice"); *Livorsi Marine, Inc.*, 358 Ill. App. 3d at 884 (notice provisions in insurance contracts are valid prerequisites to coverage and not mere technical requirements which the insured is free to overlook or ignore with impunity).

¶ 30    Nonetheless, AMCO asserts that Hartz provided reasonable and timely notice of the underlying action to Erie, by arguing that Hartz complied with the notice requirement under the

---

[4] The factual background in AMCO's brief states, and Erie does not dispute, that Erie's counsel filed an appearance on behalf of VDL in the underlying action on July 30, 2008.

Erie policy because Erie received actual notice of the underlying action. AMCO argues that Erie received *actual* notice of the underlying action by July 30, 2008 when counsel for Erie filed an appearance on behalf of VDL, which was only fourteen months[5] since Hartz "indisputably was aware of the Smith lawsuit." AMCO argues that once Erie received actual notice of the underlying action in July 2008, Erie was "on notice" that Hartz's liability potentially arose out of VDL's work and that the lawsuit potentially fell within the scope of coverage under the Erie policy. Relying primarily on *The Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317 (1998), AMCO argues that Hartz was not required to make a formal tender of defense to Erie; rather, once Erie received actual notice of the underlying action in July 2008, Erie had the duty to inquire whether Hartz desired its assistance. AMCO further argues that the circuit court erred in finding *Cincinnati Cos.* inapplicable, and that Pochiro's deposition testimony did not support the court's conclusion that Hartz should have tendered the claim to Erie immediately when Smith filed the original underlying complaint in March 2007.

¶ 31 We find *Cincinnati Cos.* to be inapposite to the case at bar. In *Cincinnati Cos.*, a construction accident resulted in a lawsuit for personal injuries against several subcontractors, including Baird, which was defended under a policy issued by Cincinnati Companies. A second subcontractor, B&D, was defended by West American Insurance Company. Unbeknownst to Baird, it was an additional insured under B&D's West American policy; therefore, it had no reason to tender a defense to West American. However, on the eve of trial, B&D disclosed that Baird was an additional insured on the West American policy. Baird then tendered its defense to

_____

[5] AMCO arrives at 14 months by calculating the time between May 24, 2007, when Hartz filed an appearance in the underlying action, and July 30, 2008, when Erie's defense counsel filed an appearance on behalf of VDL. However, there is a 16-month gap when calculating the time between March 2007, when the original underlying action was filed naming Hartz as a defendant, and July 2008, when Erie's counsel filed an appearance on behalf of VDL.

West American, which rejected Baird's tender. *Cincinnati Cos.*, 183 Ill. 2d at 319-21. Our supreme court held that the insurer could not decline coverage on the basis that there had not been an official tender of defense by the newly discovered insured when it already had "actual notice" of the action because it had been actively defending the identical lawsuit for another insured, B&D. *Id.* at 329-30. Defining "actual notice" as "notice sufficient to permit the insurer to locate the suit and defend it," our supreme court concluded that the insurer *actually knew* of the lawsuit at issue for three years, as it had been defending B&D throughout the pendency of that action. *Id.* at 330. Accordingly our supreme court held that an exception to the tender requirement exists—and the insurer's duty to defend was therefore triggered—where it was unmistakable that the insurer was already aware of the lawsuit. In arriving at this holding, our supreme court explicitly stated that because neither party invoked the specific terms of the policy, "policy defenses have not been a factor in our decision." *Id.* at 323 n.1.

¶ 32 We find AMCO's reliance on *Cincinnati Cos.* to be misplaced, as it is neither factually nor legally on point with the case at bar. *Cincinnati Cos.* concerned the issue of what is necessary to trigger an insurer's *duty to defend*, which our supreme court held that the duty arises with actual notice of a claim against an insured, except where the insured has knowingly forgone the insurer's assistance. *Id.* at 328. AMCO does not claim either in the circuit court or on appeal that Erie breached its duty to defend to Hartz. Here, unlike *Cincinnati Cos.* in which the insurer rejected the insured's tender, it is undisputed that Erie accepted Hartz's defense tender subject to a reservation of rights as it was required to do. See *American National Fire Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh, P.A.*, 343 Ill. App. 3d 93, 101 (2003) (it is well settled that when an underlying complaint presents an issue of potential insurance coverage and the insurer believes that the policy does not cover the claim, the insurer may not refuse to defend

the insured but must either defend the suit under a reservation of rights or seek a declaration of no coverage). The crux of the case at hand concerns the issue of indemnification. AMCO, as the settling insurer, seeks indemnification contribution from Erie, the nonsettling insurer, for half of the $1 million settlement amount that AMCO paid on behalf of Hartz in the underlying action.[6] Further, unlike in *Cincinnati Cos.* where notice provisions were not at issue and policy defenses were not raised by the parties to that action, Erie is vigorously raising policy defenses, arguing that the language of the policy controls, and relying upon long-settled precedent that an insured's compliance with the notice provisions is a prerequisite to insurance coverage. See *Northbrook Property & Casualty Insurance Co.*, 313 Ill. App. 3d at 464 (the insurance contract controls the insured's duties); *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 210 (2010) (Freeman, J., dissenting). Moreover, the *Cincinnati Cos.* court did not determine if notice was unreasonable as a matter of law whereas, here, the relevant inquiry is whether Hartz's delayed notice to Erie was unreasonable and whether it complied with the notice requirement under the plain terms of the Erie policy. AMCO's arguments in favor of applying the actual notice rule in *Cincinnati Cos.* seem to suggest that the duty to defend and the duty to indemnify are the same. However, an insurer's duty to defend its insured is much broader than its duty to indemnify. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992). Thus, we find that the actual notice rule in *Cincinnati Cos.* does not apply in the case at bar.

---

[6] AMCO's May 16, 2012 amended complaint for declaratory judgment against Erie specifically alleged that Erie breached its duty to *indemnify* Hartz against the underlying action, and made no mention of the duty to defend. See *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 911 (1994) ("[a] plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in his complaint. *** In ruling on a motion for summary judgment, the court looks to the pleadings to determine the issues in controversy").

¶ 33 Even if the actual notice rule applied, we find that the 16-month[7] delay was unreasonable as a matter of law, where there was no justification for this delay and where, as discussed, Hartz tendered notice to other insurers (West Bend, Country Mutual and AMCO) within one month after their respective primary insureds were named as defendants in the underlying action. But compare *Employers Reinsurance Corp. v. E. Miller Insurance Agency, Inc.*, 332 Ill. App. 3d 326 (2002) (insurer's duty to defend triggered where it received actual notice of the underlying lawsuit within a reasonable time—two months—after the insured was served with the complaint and summons); *Illinois Founders Inc. Co. v. Barnett*, 304 Ill. App. 3d 602 (1999) (insurer's duty to defend triggered where it received actual notice of the underlying lawsuit within eight days after the occurrence). Thus, we find that AMCO's argument on this basis must fail.

¶ 34 We note that, in arguing that Hartz's late notice to Erie was unreasonable, Erie asserts that the doctrine of judicial estoppel applied to bar AMCO from now taking the position that Hartz's notice under the Erie policy was timely. Erie specifically points out that AMCO, in response to Cincinnati's motion to dismiss[8] in the instant declaratory judgment action, had argued that Hartz's "target tender" to AMCO was invalid because it was untimely. Erie argues that because the timeframe within which Hartz tendered its defense to AMCO was much shorter than the timeframe within which Hartz tendered its defense to Erie, AMCO "cannot now take the diametrically opposite position that Hartz's notice under the Erie policy was timely." We reject this argument. The doctrine of judicial estoppel "promotes the truth and protects the integrity of

---

[7] Calculated from March 2007 when Smith filed his original complaint against Hartz, to July 2008, when Erie received actual notice of the lawsuit and its counsel filed an appearance on behalf of VDL.

[8] As noted, AMCO brought the instant declaratory judgment action against both Erie and Hartz's general liability insurer, Cincinnati. The circuit court granted Cincinnati's motion to dismiss, which this court affirmed. See *AMCO Insurance Co.*, 2014 IL App (1st) 122856.

the court system by preventing litigants from deliberately shifting positions to suit the exigencies of the moment." (Internal quotation marks omitted.) *United Automobile Insurance Co. v. Buckley*, 2011 IL App (1st) 103666, ¶ 35. The elements of judicial estoppels are: (1) the two positions must be taken by the same party; (2) the positions must be taken in judicial proceedings; (3) the positions must be given under oath; (4) the party must have successfully maintained the first position and received some benefit; and (5) the two positions must be totally inconsistent. *Id.* Judicial estoppel applies to statements of fact and not to legal opinions or conclusions. *Id.* We find that judicial estoppel did not apply to the case at bar. First, AMCO's positions regarding timeliness pertained to legal conclusions, not statements of fact. Second, Erie has not made, nor can it make, any arguments regarding how AMCO had successfully maintained its first position, where the circuit court dismissed AMCO's claim and this court affirmed the dismissal, let alone argue that AMCO derived some benefit from that position.

¶ 35 Therefore, because Hartz's untimely notice barred coverage under the Erie policy, AMCO was not entitled to seek contribution from Erie for the $1 million that AMCO paid in settling the underlying action against Hartz. Moreover, although AMCO argues in a single sentence that Erie also owes half of all "unreimbursed costs" incurred by AMCO in defending Hartz in the underlying action, AMCO does not cite to legal authority or to any part of the record in support of this claim.[9] Thus, AMCO has forfeited this issue for review on appeal. See *Sekerez*, 2011 IL App (1st) 090889, ¶¶ 80-82 (failure to cite legal authority in violation of Rule 341(h)(7) results in forfeiture of the issue); Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (arguments shall contain citation of the authorities and citation of the record). Accordingly, we find that the circuit court

---

[9] In AMCO's reply brief in support of its own motion for summary judgment before the circuit court, AMCO asserted that it "is prepared to prove up, in the appropriate post-judgment proceeding, its defense costs incurred after Erie receive actual notice in July, 2008 ***."

did not err in granting summary judgment in favor of Erie and against AMCO. In light of our holding, we need not address the parties' remaining arguments on appeal.

¶ 36    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.